(Decided 13th April, 1881.)

JAMES H. GABLE and HENRY WELLES RUSK, Trustees in Insolvency of JESSE F. HAMPTON *vs.* WM. T. SCOTT, FRANK L. KNELL, and others. JAMES H. GABLE and HENRY WELLES RUSK, Trustees in Insolvency of THOMAS E. HAMPTON *vs.* THE SAME.

*Exceptions to Sale made by Trustees in Insolvency—A previous order of Court necessary—The Act of 1880, ch. 172, not Retrospective in its operation—Rule of Construction of the Act of 1880, ch. 172—Effect of the Act of 1880, ch. 172, upon cases in Insolvency commenced before it was passed—Jurisdiction of the Insolvent Court as contrasted with that of a Court of Equity—The trustees in Insolvency may only sell the interest of the Insolvent in land—Mode of procedure where the interest of the Insolvent cannot be sold advantageously—Two insolvent cases cannot be Consolidated—One trustees' Bond in the two cases irregular—Mode of selling property held Jointly by two Insolvents—Power of Clerk under sec. 16, of Art. 48, of the Code, to approve Trustees' bonds.*

It is a valid objection to a sale made by trustees in insolvency, that it was made without a previous order of Court.

Gable and Rusk, Trustees in Insolvency *vs.* Scott, *et al.*

The Act of 1880, ch. 172, by which certain sections of Art. 48, of the Code, Title "Insolvents," were repealed and re-enacted with amendments, and certain new sections added thereto, is not retrospective in its terms, and cannot be construed as retrospective in operation.

In construing that Act, the true rule is to construe the amendments and additions thereby made to the Code, in the same manner as supplementary Acts were formerly construed, and as having no effect upon pending cases.

Insolvent cases commenced before said Act was passed, are to be proceeded with under and in conformity with the provisions of Art. 48 of the Code, and are not affected by the Act of 1880.

Two insolvent petitioners at the time of filing their petitions, held the equitable title in fee to certain land, subject to certain claims thereon due to G. and B., who held the legal title as security for their claims. The insolvent trustees sold the land, and on exceptions to the sale, it was HELD :

1st. That although the Code (Art. 48, sec. 10,) directs that "the estates of insolvents shall be distributed under the order of the Court, according to the principles of equity," the Court is not clothed with the jurisdiction and powers of a Court of Chancery; it is acting under special statutory powers, and has not the jurisdiction to divest the legal title of G. and B., or to determine the nature and extent of their rights in the property, or those of the insolvent petitioners; to do this is exclusively within the cognizance of a Court of equity, which may summon before it all the parties in interest, and pass upon their respective rights.

2nd. That the trustees could sell only the equitable title or rights of the insolvents, leaving to the purchasers to assert in a proper *forum* their rights against G. & B.

3rd. That if the same could not be sold advantageously, the trustees might institute proceedings in a Court of Chancery against G. and B.; or such proceedings might be instituted by G. and B. to obtain a decree for the sale of the property, and an adjustment and determination of the equitable rights of the insolvents, and the amount of the trust estate to which they might be entitled; and the same, when received, would be distributed under the order of the insolvent Court.

On the separate applications of said insolvent petitioners for the benefit of the insolvent laws, the same trustees were appointed in

Gable and Rusk, Trustees in Insolvency *vs.* Scott, *et al.*

each case. A bond was filed in the case of one of the petitioners by the trustees, which recited their appointment in *both cases*, and was conditioned upon their faithful performance of their duties in *both* cases. HELD:

1st. That this bond was wholly irregular.

2nd. That the case of each insolvent petitioner must be conducted separately from the other; they cannot properly be consolidated. At the same time as the equitable rights of the insolvents in the property were held by them jointly, if it be deemed advisable to offer the same for sale, there could be no valid objection to the Court's ordering that both be sold by the trustees at the same time; and when sold, the trustees ought to report the sale in *each case*, in such way as that one-half of the proceeds of sale may be reported and returned in *each* case.

Art. 48, sec. 16, of the Code, authorizes the clerk to approve the bond of the trustees, and to do other things, under such rules as the Circuit Court may prescribe. HELD:

That in the absence of such rules there is no doubt of the power of the clerk to approve the bond under said 16th section.

APPEALS from the Circuit Court for Baltimore County.

The cases are stated in the opinion of the Court.

The causes were argued before BARTOL, C. J., BOWIE, MILLER, ROBINSON and IRVING, J.

*James H. Gable,* for the appellants.

*Frederick C. Cook,* for the appellees, Garrettson and Troxell.

*Thomas R. Clendinen,* for the appellees, Stallings and Bennett.

*Frederick Leist* filed a brief for the appellee, Wm. T. Scott.

*Charles E. Wilcox* filed a brief for Frank L. Knell.

BARTOL, C. J., delivered the opinion of the Court.

These appeals have been argued together, they present the same questions, and will be disposed of in one opinion.

It appears from the record, that on the 24th day of November, 1879, Jesse F. Hampton and Thomas E. Hampton, each presented in the Circuit Court for Baltimore County, his petition for the benefit of the Insolvent Laws. The insolvent proceedings are not set out at length in the record, but it appears from the docket entries, that in each case schedules with affidavits, &c., were filed as required by law. On the same day, the clerk of the Circuit Court appointed in each case, Henry Welles Rusk and James H. Gable, the appellants, trustees, and fixed the first Monday in June 1880, for the appearance of the insolvent petitioners. On the same day a bond was filed by the trustees, with sureties, in the penalty of $40,000, which was approved by the clerk.

The bonds filed will be noticed hereafter. On the same day, each of the insolvents executed to the trustees, a deed according to law, conveying all his property and estate of every hind, in trust for the benefit of the creditors of the insolvent petitioner.

On the 29th day of November, the trustees without any previous order of the Court, proceeded to advertise for sale certain property in fee, as the property of the two insolvent petitioners, prescribing the terms of sale, and in pursuance of the advertisement, proceeded to sell the same at public auction on the 23rd day of December 1879. The sales were reported in each case, amounting in the whole to $24,325.00. Whereupon, exceptions were filed in each case, to the ratification of the sales by several persons; viz., by Frank L. Knell, who was reported as the purchaser of the two parcels of property, by William T. Scott, who claimed title to one of the lots

sold, and by John W. Maxwell, Troxall and Garrettson, Benjamin E. Bennett and John W. Stallings, claiming to be creditors of the insolvent petitioners.

Upon the hearing of the exceptions, the Judge of the Circuit Court passed an order in each case, setting aside the sales. From these orders the present appeals were taken.

In compliance with the provision of the Code, *Art.* 5, *sec.* 13, the Circuit Court has certified the questions raised in and decided by the Court, in each case as follows:

"1st. What title to said property was vested in the said trustees."

"2nd. That no proper bond, as is required by law had been filed, (by the trustees.")

"3rd. That no order of Court authorizing the said sale, was first obtained from the Court, before making the said sale by the said trustees."

"4th. That the Act of Assembly passed at January Session, 1880, ch. 172, repealed Article 48 of the Code of Public General Laws, in so far as to set aside these entire proceedings."

"5th. That the exceptant, Wm. T. Scott, was entitled to, and the owner of house and lot designated as No. 18 on the plat annexed to the original agreement between Frank L. Knell and wife, and the insolvents Jesse F. and Thomas E. Hampton, bearing date July 16th, 1878, and that the same did not belong to the insolvent estates of Jesse F. Hampton and Thomas E. Hampton."

"6th. That there could not be a consolidation of the two insolvent cases of Jesse F. Hampton and Thomas E. Hampton, so as to sell the interest of both insolvents at one and the same sale together, as one estate, for one and the same price, viz., $24,325—as has been done by the trustees in this case."

The ground on which the sale was set aside by the Circuit Court was, that it had been made by the trustees

without any preliminary order of the Court, directing the sale and prescribing the terms and manner thereof. And on this point, we concur with the learned Judge of the Circuit Court in the opinion that such an order was necessary. It appears from the advertisement, that the trustees proceeded under the impression that there was a standing order of the Court, authorizing sales by insolvent trustees, such as exists in the City of Baltimore, but in this they were in error. In the absence of such standing order, a special order was necessary to authorize the sale. This is the established practice in this State in cases of insolvency, and for obvious reasons this practice ought not to be departed from ; it is essential both for the protection and government of the trustee, and to secure the rights of purchasers, that the sale shall be made under the Court's order, and that the terms and manner thereof shall be prescribed by the Court. To support the sale made in this case, the appellants rely upon the rule which exists in Courts of chancery. They refer to *Gray, et al. vs. Lynch and McDonald*, 8 *Gill*, 426 ; where was said, "It is a settled rule in chancery, that where a trustee does, without an application to the Court, an act which would have been ordered, if authority for that purpose had been previously applied for, and at the time of the act being done, it was obviously for the benefit of all concerned, such act will be ratified and affirmed, and held of the same validity as if it had emanated from the previous order of the Chancellor."

In that case the rule was applied, where the trustees under a will had power to invest the trust fund in stock, and they made a new investment without a previous order of the Court. So in *Brown vs. Hazlehurst*, 54 *Md.*, 26, where a receiver caused property to be insured, without an order of the Court, it was held that he was entitled to be reimbursed the amount paid by him as premium on the insurance.

And in *Abell vs. Brown,* 55 *Md.,* 217, where a trustee without a previous order of the Court, instituted a suit to recover the trust funds, his act was held to be valid, for the reason that under the circumstances, a previous authority would have been granted if it had been applied for.

But this rule is not applicable to a case like the present. The insolvent trustees are vested with the property of the insolvent for the benefit of the creditors; the deed under which they hold, clothes them with no power to sell or dispose of the property. This power must be conferred on them by the Court under whose jurisdiction and authority they act, and consequently an order of the Court is necessary to clothe them with the power to sell, and in the exercise of that power they must conform to the terms prescribed by the order. It would be an anomaly to hold that they may prescribe for themselves the manner and terms of sale, or determine in what way the property shall be disposed of. In our opinion it was a valid objection to the sale, that it was made by the trustees without a previous order of the Court, and for that reason it was properly set aside.

We proceed to pass upon the other questions presented by the appeal, and which have been argued, as they appear to be material in the further progress and final determination of the case.

And *first* as to the "*fourth question*" presented by the certificate. This relates to the effect of the Act of 1880, ch. 172.

On this question we concur in the opinion of the Judge of the Circuit Court, that the Act of 1880 has no application to the case, and in no manner affects these proceedings. That Act is not retrospective in its terms, and cannot be construed as retrospective in its operation. As was said in *Williar vs. Butchers' L. & A. Asso., &c.,* 45 *Md.,* 555, "No rule of construction is better settled than

that every statute is to be construed as prospective in its operation, unless the intention of the Legislature that it shall have a retroactive effect is clearly expressed in the statute.   This rule is founded in reason and justice, and has been repeatedly recognized and enforced by the Court of Appeals," citing *Baugher vs. Nelson*, 9 *Gill*, 303 ; *State vs. Norwood*, 12 *Md.*, 206 ; *Clark vs. Mayor, &c.*, 29 *Md.*, 283 ; *Williams vs. Johnson*, 30 *Md.*, 508, and *Herbert, et al. vs. Gray*, 38 *Md.*, 529.

As to the effect of the provisions of the Act of 1880, whereby certain sections of *Art.* 48 of the Code were repealed and re-enacted with amendments, we refer to *Dashiell vs. Mayor, &c.*, 45 *Md.*, 615, 622, 623.

The Constitution (Art. 3, sec. 29,) requires the General Assembly in amending any Article or section of the Code to "*enact the same as the said Article or section would read when amended.*"   This been done by the Act of 1880, and certain additional sections have been added.

In construing the Act, the true rule is to construe the amendments and additions thereby made to the Code, in the same manner as supplementary Acts were formerly construed, and as having no effect upon pending cases. It follows that these proceedings having been commenced before the Act was passed, are to be proceeded with, under and in conformity with the provisions of *Art.* 48 of the Code, and are not affected by the Act of 1880.

The "*first question*" presented by the certificate, relates to the title held by the insolvents in the property, and which was vested in the trustees.   This depends upon the construction and effect of the agreement made between Knell and wife of the one part, and Jesse F. Hampton and Thomas E. Hampton of the other part, dated July 16th, 1878, the supplemental agreement between the same parties, dated March 21st, 1879 ; the assignment thereof on the same day by Jesse F. and Thomas E. Hampton, and William T. Scott to Gable & Beacham ; the deed from Knell and wife to Gable & Beacham, dated Sep-

tember 23rd, 1879, and the agreement dated March 21st, 1879, between Gable & Beacham of the first part, and Jesse F. Hampton, Thomas E. Hampton and William T. Scott of the second part. It appears by the admission of facts contained in the record that the last mentioned agreement was recorded on the same day with the deed from Knell and wife to Beacham, before referred to.

The original agreement of July 16th, 1878, referred to the property on both sides of Carey street, described on the plat as lots No. 1 to No. 17 inclusive, and to the parcels of land in the rear of those lots also designated on the plat. Under a proceeding in chancery instituted by Knell, the lots on the west side of Carey street from No. 1 to No. 10, inclusive, were sold before the making of the supplemental agreement of March 21st 1879. This last related only to the lots on the east side of Carey street, from No. 11 to No. 17 inclusive, and also to the parcels of ground in the rear of the lots on the east and west side of Carey street, and to the lot on the west side of Carey street, designated on the plat as No. 18. This is the property which was conveyed by Knell and wife to Gable & Beacham by the deed of September 23rd 1879, and referred to and embraced by the agreement of March 21st 1879, between Gable & Beacham and Jesse F. and Thomas E. Hampton and William T. Scott; and this is the property to which, it is asserted by the appellants, the insolvents held the equitable title in fee, subject to certain claims thereon due to Gable & Beacham, as a security for which they held the legal title. And the appellants contend that under the authority of *Alexander vs. Ghiselin,* 5 *Gill,* 138, 179, and *Zeigler vs. King,* 9 *Md.,* 330, it is their duty to take possession of the property, and under the orders of the Court, to sell the whole fee simple estate, legal and equitable, leaving to Gable & Beacham the right to assert their claim upon the proceeds of sale.

But in this view we do not concur. It is very clear that the appellants, as trustees, took no title except what was

held by the insolvents, and that was a mere equity. The legal estate was vested in Gable & Beacham, in the nature of a trust. It is not competent for the Court, sitting in insolvency, to pass upon their rights or to adjust and decide the equities as between them and the insolvent petitioners. The Code, (Art. 48, sec. 10,) directs that "the estates of the insolvents shall be distributed, under the order of the Court, according to the principles of equity;" but the Court is not clothed with the jurisdiction and powers of a Court of chancery; it is acting under special statutory powers, and has not the jurisdiction to divest the legal title of Gable & Beacham or to determine the nature and extent of their rights in the property, or those of the insolvent petitioners; to do this is exclusively within the cognizance of a Court of equity, which may summon before it all the parties in interest, and pass upon their respective rights. This is not a case like *Zeigler vs. King*, where the insolvents hold an equity of redemption in property mortgaged, and where the mortgage has matured. It follows, that the trustees can sell only the equitable title or rights of the insolvents, leaving to the purchasers to assert in a proper *forum* their rights against Gable & Beacham. And if the same cannot be sold advantageously, the trustees may institute proceedings in a Court of chancery against Gable & Beacham, or such proceedings may be instituted by Gable & Beacham to obtain a decree for a sale of the property, and an adjustment and determination of the equitable rights of the insolvents, and the amount of the trust estate to which they may be entitled, and the same when received will be distributed under the order of the insolvent Court.

These observations apply to the "*fifth question*" propounded, relating to the claim or title of W. T. Scott to *Lot No.* 18, which can only be determined by a Court of chancery, upon proper proceedings to be instituted therein.

It is very clear that they cannot be determined in the insolvent proceedings.

With respect to the sufficiency of the bonds given by the trustees, raised by the "*second question*" in the certificate, it does not appear from the record, that any bond was filed in the case of Thomas E. Hampton. It is necessary that a bond should be given and approved in *each case*. In that of Jesse F. Hampton, the first bond given by the trustees, recited their appointment in *both cases*, and was conditioned upon the faithful performance of their duties as trustees in both cases; this was wholly irregular.

A second or supplemental bond was filed in the case of Jesse F. Hampton, and was approved by the clerk.

The Code, *Art.* 48, *sec.* 16, authorizes the clerk to approve the bond of the trustees, and to do other things, under such rules as the Circuit Court may prescribe. In the absence of such rules, there is no doubt of the power of the clerk to approve the bond under the 16th section above cited.

As to the "*sixth question*" presented for our consideration, it may be said that the case of each insolvent petitioner must be conducted separately from the other; they cannot properly be consolidated; at the same time as the equitable rights of the insolvents in the property were held by them jointly, if it be deemed advisable to offer the same for sale, there can be no valid objection to the Court's ordering that the rights of both be sold by the trustees at the same time; and when sold the trustees ought to report the sale in *each case*, in such way as that one-half the proceeds of sale may be reported and returned in *each* case.

In each of the appeals, an order will be signed affirming the order of the Circuit Court setting aside the sale, and remanding the case.

The costs in each to be paid out of the trust estate.

*Orders affirmed, and cases remanded.*

(Decided 14th April, 1881.)