# THE HARFORD NATIONAL BANK OF BEL AIR

## *vs.*

## CHARLES A. RUTLEDGE AND ELIZABETH W. RUTLEDGE.

*Evidence: parties to a cause, when other party is dead; Code, Art. 35, sec. 3; Acts of 1904, Ch. 661; Acts of 1902, Ch. 495. Bills and notes: parol evidence; collateral matters; proof of payment. Evidence: legal sufficiency and weight; province of court and jury.*

Chapter 661 of the Acts of 1904 (codified as Article 35, section 3 of the Code of 1912), in amending the law as to the admissibility of evidence of parties to a cause, exempts from its application the cases then pending.            p. 55

But Chapter 495 of the Acts of 1902, making the evidence of parties to contracts, in certain cases, admissible, when the other party is dead, did not reserve pending cases from its application.            p. 54

The ruling of a trial court upon questions of evidence can not constitute reversible error when it appears from the record that the exceptant was not injured thereby.            p. 56

In an action upon a note by an endorser, parol evidence as to the circumstances under which the note was given, may be offered, provided that the endorsee had notice of them when he acquired title.            p. 56

In an action by an endorser against the maker, if the maker has proved that the note was secured by a bill of sale, his testimony as to what property was covered by the bill of sale is admissible, when part of his defense is that the property had been sold and the proceeds applied to the payment of the note.

p. 56

In support of the question of legal sufficiency of evidence to support the issue, the Court does not consider the weight of evidence, which is a matter exclusively for the determination of the jury.                                    p. 65

*Decided June 26th, 1914.*

Appeal from the Circuit Court for Baltimore County. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The following are the prayers that were offered by the plaintiff and by the defendants, and the Court's action upon the same:

*Pltf.'s 1st Prayer.*—The jury are instructed that if they find the execution and delivery of the two notes described in the declaration, and that the same were discounted by the plaintiff for Allen Hoffman a few days after their respective dates, and that subsequently on or about the 6th day of May, 1896, said Hoffman took up said notes and then pledged them to the plaintiff as collateral to his indebtedness to it, and that of said indebtedness there remains due to the plaintiff a sum in excess of said notes and interest thereon, then the plaintiff is entitled to recover and their verdict must be in favor of the plaintiff unless the jury find that the defendants delivered said Hoffman for sale certain canned goods sufficient to pay said notes, and further find that the plaintiff knew of such arrangement and assented thereto; and the burden is upon the defendants to show said notice and assent by the greater weight of evidence.    (*Granted.*)

*Pltf.'s 2nd Prayer.*—If the jury find their verdict in favor of the plaintiff under its first prayer, then the plaintiff is entitled to recover the amount of said notes with interest thereon from June 1st, 1896.  (*Granted.*)

*Pltf.'s 3rd Prayer.*—The jury are instructed that no agreement the defendants may have had with Allen Hoffman with reference to the delivery and application of canned goods covered by the bill of sale mentioned in the evidence, if they find such, was binding upon the plaintiff, unless the jury find that said agreement was made known to the president of said bank, and by him approved and assented to. (*Granted.*)

---

*Defs.' 1st Prayer.*—The defendants pray the Court to instruct the jury that under the pleadings and the evidence in this case there is no evidence legally sufficient to show that the indebtedness for which the witness S. A. Williams testified the notes sued on in this case were given as collateral to the plaintiff have not been paid and that therefore the plaintiff is not entitled to recover in this action and their verdict must be for the defendants.  (*Refused.*)

*Defs.' 2nd Prayer.*—The defendants pray the Court to instruct the jury that if they find from the evidence in this case that before the notes sued on were discounted by the plaintiff it was notified that they were to be paid out of the proceeds of the sale of certain canned goods, the property of the defendants, and it agreed that said notes should be paid out of such proceeds, and that said goods were sold and out of the proceeds thereof the amount due on said notes was paid to the said plaintiff by the payee named in said notes who had endorsed the same to the plaintiff that then the obligation of the defendants under said notes was satisfied and discharged by such payment, and their verdict must be for the defendants, even though they find that the plaintiff

held said notes after such payment, if they find the same and pledged by the payee as security for other indebtedness of the said payee to it.   (*Granted.*)

*Defs.' 3rd Prayer.*—The defendants pray the Court to instruct the jury that if they find from the evidence in this case, that the notes sued on were given by the defendants to the payee, Hoffman, and that they executed a bill of sale on certain canned goods to the said Hoffman to secure the payments of said notes and that it was agreed between the defendants and the said Hoffman, that asid notes should be paid from the sale of the canned goods covered by said bill of sale, and that the plaintiff was notified that said notes were secured by said bill of sale, and were to be paid out of the proceeds of the sale of the goods covered by it, and that after being so notified the said plaintiff discounted said notes and agreed that it would see that said notes were paid from the proceeds of the sale of the goods covered by said bill of sale, and that thereafter said goods were sold and shipped with a sight draft attached to the bill of lading payable to the said Hoffman, and that the proceeds of said sale were paid with the consent of the plaintiff to the said Hoffman, and that he paid therefrom the amount due on said notes to the plaintiff, then their verdict may be for the defendants even though they find that after said payment said notes were left with the plaintiff to secure other indebtedness of said Hoffman. (*Granted.*)

*Defs.' 4th Prayer.*—If the jury believe from the evidence that the notes, the cause of action in this case, were given by the defendants to Allen Hoffman, who indorsed the same to the plaintiff, and that said notes were afterwards and before their maturity paid by check of said Allen Hoffman, with money he had received from the sale of canned goods of the defendants which had been pledged to secure the debts for which said notes were given; and further find that the plaintiff knew that the canned goods aforesaid and sold as aforesaid, if they find they were sold, were pledged for the

payment of the money for which said notes were given, then
their verdict must be for the defendants.    (*Granted.*)

*Defs.' 5th Prayer.*—The defendants pray the Court to
instruct the jury that the burden of proof is in the plaintiff
to show by a preponderance of testimony that the indebted-
ness the witness S. A. Williams testified these notes sued on
in this case were pledged as collateral only by the payee after
they had been paid by the payee has not been paid, and if
the testimony should be such as to leave the minds of the
jury in an even balance as to whether said indebtedness has
been paid, then their verdict must be in favor of the defend-
ants.    (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*David G. McIntosh* (with whom was *S. A. Williams* on
the brief), for the appellant.

*John S. Young* (with whom was *T. Scott Offutt* on the
brief), for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1896 the appellee, Charles A. Rutledge and Elizabeth
W. Rutledge, his wife, of Harford County, executed two
promissory notes in favor of Allen Hoffman, of that county,
one dated Rocks, Maryland, February 19, 1896, for $544.50,
payable three months after date, with interest. and the other
dated Rocks, Maryland, March 14th. 1896, for $1,082.26,
payable two months after date, with interest from date, and
shortly thereafter the notes were discounted by the Harford
National Bank of Bel Air for the payee.

Mr. Williams, the president of the bank, states that about
the sixth of May, 1896, a short time before the notes ma-
tured, the payee, Allen Hoffman, came to him with the note
of H. C. Campen or H. C. Campen and Company, who were

canned goods brokers in Bel Air, and wanted the note discounted by the bank; that he made some investigation about the note, and being satisfied with it he had it discounted for him and the proceeds placed to his credit; that Mr. Hoffman afterwards drew his check and paid the Rutledge notes, and that after they were paid he, Mr. Williams, required him to leave them with the bank as collateral for Mr. Hoffman's other obligations at the bank, and delivered them to the cashier who filed them away, and that they have "remained in possession of the bank ever since"; that on the 17th of October of the same year "a petition in insolvency was filed" against Mr. Hoffman, whose liabilities to the bank at that time amounted to over $18,000.00, and that suit was brought in the Circuit Court for Harford County on the Rutledge notes on the 29th of January, 1897.

The record shows that Charles A. Rutledge was summoned to the February Term, 1897, and that the writ having been returned *"non est"* as to Mrs. Rutledge, it was renewed from term to term until she was summoned to the May Term, 1899. In the meantime the case against Mr. Rutledge had under the rules of Court been carried to the stet docket, but after the appearance of Mrs. Rutledge it was reinstated on the trial docket; the cases were consolidated, and on the 11th of September, 1900, upon the suggestion and affidavit of the defendants, the Court directed the record to be sent to the Circuit Court for Baltimore County for trial. The record was not transmitted to the Circuit Court for Baltimore County until the 7th of September, 1910, and on the 19th of the same month that Court entered a judgment by default in favor of the plaintiff, and the judgment was extended for $3,025.66, with interest from date. The judgment was subsequently stricken out, and the case was tried in December, 1913, upon issues joined on the pleas of "never promised," etc., and "not indebted," etc.

Mr. Williams further states that after the suggestion and affidavit for a removal was filed in the Circuit Court for

Harford County he took for granted that the defendants would have the record sent to Baltimore County, and that he lost sight of the case until the spring of 1910; that there remains of Mr. Hoffman's indebtedness to the bank, as of the last of December, 1902, $3,000.00; that Mr. Hoffman resigned as a director of the bank on the 14th of October, 1896, and that he died on the 26th of January, 1897, and that the date, 20th of May, 1896, on the back of the notes is the date of notice sent to the defendants that the bank held the notes and desired payment.

Mr. Finney, who was cashier of the bank at the time the Rutledge notes were paid by Mr. Hoffman, says that Mr. Williams handed him the notes and told him to hold them as collateral; that he placed them in an envelope upon which he endorsed the amount of the notes, and that the date stamped on the back of the notes is the date of the notice he sent to the makers that the notes were due or overdue; that he was cashier of the bank for four or five years and left it in 1899; that Mr. Hoffman was an active director of the bank, who sometimes missed meetings of the directors, like other directors, but that he did not think he missed many, and that Mr. Hoffman's office "at one time was across the way from the bank, and at another time was in the next building."

Dr. Rutledge, one of the defendants, who was seventy-three years of age at the time of the trial, testified that in 1896 and 1897 his principal business was canning corn and tomatoes, and that he owned a large farm on which he raised most of his "canned goods;" that Mr. Hoffman, who was a canned goods broker and a director of the Harford National Bank, rendered him financial assistance in his business, and had been doing so for ten years; that he had given Mr. Hoffman a bill of sale of the tomatoes and corn canned by him in 1895, which were stored in a warehouse at Rocks, to secure such amounts as he owed him; that before he and his wife execute the notes in this case, which he under-

stood were to be discounted at the Harford National Bank, he went to the bank and told Mr. Williams, the president, that the understanding between him and Mr. Hoffman was that the notes were to be secured by the bill of sale he had given Mr. Hoffman, and were to be paid out of the proceeds of sales of the canned goods mentioned in the bill of sale; that when the goods were sold a sight draft would be attached to the bill of lading, and that he wanted the bank to see that the proceeds of the sales of the goods and of the drafts were applied to the payment of the notes, and that Mr. Williams promised that he would do so; that he and his wife signed the notes, and that when he sold and shipped the goods in May, 1896, he took the bills of lading to Mr. Hoffman, and that sight drafts on the consignees for the amount of the sales, with the bills of lading attached, were collected through the bank; that sometime after the goods were shipped he had a settlement with Mr. Hoffman; that Mr. Hoffman told him the notes had been paid and paid him the difference between the amount for which the goods sold and the amount the witness owed him, and told him that the notes were in his bank box; that in order to feel certain that the notes had been paid according to the understanding with the bank and Mr. Hoffman, he went to the bank to see about it, and that Mr. Williams told him that the notes had been paid, but that he did not at that time get the notes from the bank because Mr. Hoffman had told him that they were in his bank box; that the goods sold for more than enough to pay the notes, and that after he went to the bank and Mr. Williams told him that the notes had been paid, he never heard anything further of them until he was summoned in this case, after Mr. Hoffman's death.

During the trial, which resulted in a verdict and judgment in favor of the defendants, from which the plaintiff has appealed, the plaintiff reserved twenty-three exceptions, the first twenty-two of which relate to rulings of the Court

on the evidence, and the twenty-third is to the action of the Court on the prayers.

The first exception was to the competency of Dr. Rutledge as a witness for the defendants, and it is insisted by the appellant that as the suit was instituted in 1897 that question must be determined by the provisions of the Act of 1888, Chapter 315, which was then in force. It is not claimed that Dr. Rutledge was not a competent witness under the Act of 1902, Chapter 495, but the contention of the learned counsel is that notwithstanding that Act did not except from its operation pending cases, it could not apply to them, and they rely upon the cases of *Dashiell* v. *Baltimore,* 45 Md. 615, and *Gable* v. *Scott,* 56 Md. 176. In *Dashiell's Case* the Court held that where a statute repeals and re-enacts a prior Act, and the repealing Act contains substantially the same provisions as the law repealed, the latter continues in force, JUDGE MILLER saying: "The repealing and enacting part of the Acts of 1874, take effect at the same time, and the enacting part (Ch. 218) substantially re-enacts the provisions of the first statute. There is high authority for the position that where a prevailing law contains a substantial re-enactment of the previous law, the operation of the latter continues uninterrupted." In *Gable* v. *Scott, supra,* the Court followed the rule announced by JUDGE MILLER in *Dashiell's Case.* The Act of 1902, however, did not re-enact the provision of the Act of 1888, but made a very radical change in the law, by which a party to a contract is permitted to testify where the other party is dead, except in actions or proceedings by cr against executors or administrators in which judgments or decrees may be rendered against them, and in the cases of *Duckworth* v. *Duckworth,* 98 Md. 98, and *Justis* v. *Justis,* 99 Md. 81, where the proceedings were begun prior to the passage of the Act of 1902 (Ch. 495), and the testimony was given after that Act went into effect, this Court held that the surviving parties to the transactions there involved were competent witnesses under the provisions of that Act.

The Act of 1902 was amended by the Act of 1904, Chapter 661 (Sec. 3 of Art. 35, Code of 1912), which also provided that it should not apply to pending cases, etc., as to which the provisions of the Act of 1902 were continued in force.

Dr. Rutledge having stated that he was engaged in the canning business in the years 1895, 1896 and 1897, he was asked by his counsel how he was engaged in the canning business during those years, and the Court having overruled the plaintiff's objection to the question, he replied that he was "engaged in canning, raising fruit for canning," and that he had a large farm and raised most of his canned goods, and the Court overruled plaintiff's motion to strike out his answer. The witness stated that the last goods he canned at Rocks was in 1895, and was then asked by his counsel who assisted him in the canning business in 1895, and the Court having overruled the plaintiff's objection to the question, the witness replied: "I suppose you mean financial assistance?" And when counsel said: "Yes," he said: "Allen Hoffman had been doing it for the last ten years." He stated further that Allen Hoffman was a canned goods broker and a director of the Harford National Bank and lived in Bel Air. The words "Secured by Bill of Sale," were written on the face of the note for $1,082.26, and after the witness had testified as we have stated, his counsel called his attention to the reference on the notes to a bill of sale and asked him what the bill of sale covered, to which question the plaintiff objected, and after the Court overruled the objection, the witness answered: "The bill of sale on canned goods that I had back in 1895," and the plaintiff then moved to strike out the answer, which motion, the Court overruled. After the plaintiff took its exception to the ruling, the Court said: "All of this is going in with the understanding that it is subject to a motion to strike out," and when counsel for the plaintiff asked the Court if that meant that they were to be precluded from taking their exceptions at the time, the Court replied: "No," and that unless the evidence was followed up by bringing

"notice home to the bank," he would exclude the testimony on motion to strike it out. Counsel for the defendants then asked Dr. Rutledge the following question: "You say there was a canned goods bill of sale to secure these notes?" and he replied, "Yes, sir." Plaintiff's counsel then stated that he "made objection to both question and answer," and the Court then said: "If it was to the answer I overrule it; if it was to the question, it comes too late." Whereupon the plaintiff excepted to the ruling of the Court, which ruling and the other rulings to which we have referred constitute the grounds of the second, third, fourth, fifth, sixth and seventh exceptions. There was no reversible error in either of these rulings. The answer of the witness in the third exception to the question in the second could not have injured the plaintiff, and it was entirely proper for the defendants to introduce the evidence mentioned in the other exceptions for the purpose of showing the circumstances under which the notes were given, provided, of course, that the bank had notice of them before it acquired title to the notes, and to explain the reference on the note to a bill of sale.

One of the notes was signed by Dr. Rutledge as agent, and the eighth exception is to the action of the Court in allowing him to state why he signed it as agent. We see no objection to the question, and the exception is not pressed in the brief of counsel.

In the ninth exception, Dr. Rutledge was asked what goods were included in the bill of sale, where they were "at the time," and where they were afterwards, and he stated that they were canned corn and canned tomatoes. Having stated that the notes were secured by a bill of sale, there was no reason why the witness could not show what property was included in the bill of sale, particularly as his defense was that that property was subsequently sold and that the proceeds of sales were applied to the payment of the notes.

In answer to further questions, the same witness testified that the property remained in the warehouse until "we

shipped" them sometime in May, 1896, and he was then
asked to state in whose name they were shipped, to which
he replied that they were shipped in his own name and
Mr. Hoffman's name jointly "because there were more goods
there than to pay those notes." The tenth and eleventh excep-
tions are to the action of the Court in overruling the objec-
tion to the question and the motion to strike out the answer
of the witness. It appears that the Court afterwards struck
out the last part of the answer, and we see no objection to
the rest of the answer or to the question. As we have said,
the witness testified that before he signed the notes he went
to the bank and had an understanding with Mr. Williams
that the canned goods included in the bill of sale were to be
shipped; that sight drafts were to be attached to the bills
of lading and collected through the bank, and that the bank
would see that the amount of the drafts, when collected, was
applied to the payment of the notes, and it was therefore
important for him to show as a part of his defense how
the goods were shipped.

The witness further testified that the drafts for the amounts
of the several shipments of the goods went through the
bank with the bills of lading attached, and that the presi-
dent of the bank told him so; that at the time this suit was
brought he and his wife were living at Rocks, in Harford
County; that after the maturity of the notes he never had
any notice from the bank that the notes had not been paid,
and that on the contrary he was told by the president of the
bank that they had been paid. When asked if he had been
told by anybody else that the notes had been paid he said:
"Yes, sir." He was then asked: "Who was that?" and he
replied that he was told by Mr. Hoffman, and in answer to
the question: "What Mr. Hoffman was that?" he said: "Mr.
Allen Hoffman, who was a director of the Harford National
Bank at the time." The twelfth and thirteenth exceptions
are to the rulings of the Court overruling plaintiff's objec-
tion to the question and refusing to strike out the answer.

Counsel for the appellant in support of these exceptions rely
upon the rule excluding hearsay evidence. But does this
testimony fall within that rule? Leaving out of view the
effect, if any, that should be given to the fact that Mr.
Hoffman was an active director of the bank, the defense
relied on is that the notes were secured by a bill of sale;
that the bank and Mr. Hoffman, who held the bill of sale,
agreed that the drafts for the proceeds of sales of the goods
should be collected by the bank and applied to the payment
of the notes; that relying upon that understanding, the notes
were signed and the goods were shipped accordingly, and
after he was assured by the bank, or its president, and by
Mr. Hoffman that the notes had been paid he had a settle-
ment with Mr. Hoffman, and never took up the notes or made
any further inquiry about them or knew that the notes had
not been paid until the suit was brought after Mr. Hoffman's
death. If no such arrangement as he states ever existed,
and no assurances of the payment of the notes had been
made, there would be no reasonable explanation of his failure
to make some inquiry at the bank about the notes except an
utter disregard of his obligations. We think, therefore, that
while the statement of Mr. Hoffman that the notes had been
paid may not be admissible to prove the *truth of that state-
ment,* the *fact he made the statement* is admissible as reflect-
ing upon and explaining the conduct of the defendant in
reference to the notes, and that it falls within one of the
well recognized exceptions to the rule in regard to hearsay
evidence. In the case of *Eareckson* v. *Rogers,* 112 Md. 160,
JUDGE PEARCE said: "Dr. Eareckson was a competent wit-
ness in the case under section 3 of Article 35 of the Code of
Public General Laws, and the fact that his agreement of
purchase with JUDGE JONES only required him to assume
the interest on this mortgage from October, 1899, when he
took possession of the property, and that JUDGE JONES was to
pay it up to that time, and had assumed him, it had been paid
and adjusted, was a material fact influencing the conduct of

Dr. Eareckson, and, therefore, within the exception to the rule against hearsay evidence as stated in 1 *Greenleaf on Evidence,* sec. 123, where the fact that the declaration was made, and not its truth or falsity, is the point in question." And the exception to the rule is more broadly stated in 1 *Greenleaf on Evidence,* sec. 101 (16th Ed.), as follows: "And generally, where the question is, where the party acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence."

After the witness had stated that the goods were shipped by him. and that he got the bills of lading from the railroad company, he was asked what he did with the bills of lading, and while he was answering the question and was saying that he took them to Mr. Hoffman with the consent of the "bank officers"—he was interrupted by an objection of the plaintiff to the answer, which the Court overruled. He was then asked what was done with the consent of the bank when he took the bills of lading to Mr. Hoffman, and after the Court had overruled an objection to the question, he replied that the goods were shipped out and when the money came back Mr. Williams, the president of the bank, told him the notes were paid. His counsel then asked him: "My question was what was done with the bills of lading when you took them to Mr. Hoffman as you have testified?" and he said the drafts were attached to the bills of lading and went with them to the parties who bought the goods. The plaintiff objected to the question and answer, and the Court having overruled the objection, the witness further stated that the drafts were made payable to Mr. Hoffman and went through the bank with the understanding with the bank and Mr. Hoffman, at the time, that the bank would see that the proceeds were applied to the payment of the notes; that the goods referred to were the goods included in the bill of sale to Mr. Hoffman, and that the witness shipped them to pay the notes in question, and that the notes were paid with the proceeds of the

drafts. The witness was then asked by his counsel if he had a settlement with Mr. Hoffman after the goods were shipped, etc., and when the plaintiff objected to the question the Court told the witness he could answer the question "Yes or No," and he replied: "I did." In answer to further questions by his counsel the witness stated that he had the settlement with Mr. Hoffman sometime in May, 1896, after the goods were shipped, but that he did not get the notes from Mr. Hoffman at the time he made the settlement, and when he was asked why he did not get them, and what Mr. Hoffman said to him, counsel for the plaintiff objected, and the Court stated that the objection was sustained as to anything that Mr. Hoffman said to the witness. The witness then said that after he had the settlement with Mr. Hoffman, in order to be certain that the notes were paid, he went to the bank to inquire about it, and that the president of the bank told him that they had been paid. Counsel for the defendants then asked him if the goods sold for enough to pay the notes, and he answered: "Yes, sir; more than enough." The Court overruled the objection of plaintiff to the question and answer, and the witness further testified that but for his misfortune in having his house burned he would have been able to produce the statement of the settlement with Mr. Hoffman, according to which Mr. Hoffman paid him the difference, and when asked by his counsel: "The difference between what?" he replied, "The goods shipped and the notes," to which answer the plaintiff objected and the Court below overruled its objection. The several rulings to which we have just referred are the grounds of the fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and nineteenth exceptions. In view of the agreement between the defendants, Mr. Hoffman and the bank, relied upon by the defendants, the defendants had a right to show how the goods were shipped, what was done with the bills of lading and that the goods sold for enough to pay the notes, in order to show what the witness did in compliance with that agreement, and that the result of that ar-

rangement relieved the defendants of any liability on the notes. The Court below refused, upon the objection of the plaintiff, to permit the defendant to state what Mr. Hoffman said to him in explanation of the defendant's failure to get possession of the notes at the time of the settlement, and the fact that he had a settlement with Mr. Hoffman, after the goods were sold and shipped by him under the circumstances stated, and the fact that Mr. Hoffman paid him the difference between the amount of the notes and the amount of the proceeds of sales of the goods, are circumstances tending to support the defense relied upon, and also to explain the conduct of this defendant, as we have stated in regard to the twelfth and thirteenth exceptions.

The twentieth exception occurred in the following cross-examination of Dr. Rutledge: "Q. I understood you to say that you went to Mr. Williams, saw him afterwards, because you wanted to be certain that the notes were paid?" "A. Yes, sir." "Q. But I understood you to say that Mr. Williams said to you that the notes were paid?" "Q. Yes, sir." "Q. Why didn't you get the notes?" "A. That is a different thing. Mr. Hoffman had those notes." "Q. No, sir; the notes were at the bank." * * * "Q. You say that you saw Mr. Williams again because you wanted to be certain that the notes were paid and he told you that the notes were paid. Now that was after the bank had the notes and you went to Mr. Williams about the notes, and you wanted to know if they were paid. I ask you again why you did not get the notes?" "Q. Why did you—you went to Mr. Williams to be sure that the notes were paid—why did you not take them up?" "A. Because I could not then get them because they were in Mr. Hoffman's possession. Mr. Hoffman had them in his possession." "Q. How do you know that?" "A. He told me that he had them in his possession, that he had them in his safe deposit box." It is apparent that having stated that he had a settlement with Mr. Hoffman, and that the president of the bank had told him the notes were paid, the

witness had a right to explain why he did not take up the
notes when he went to the bank, and when pressed to state
how he knew that they were in Mr. Hoffman's possession, he
had a right to give the source of the information upon which
he relied and acted. The evidence, as we have already ex-
plained, was not admissible for the purpose of showing that
the notes were in fact in Mr. Hoffman's safe deposit box,
but it was admissible for the purpose of explaining why the
witness did not demand delivery of the notes by the bank.

When Mr. Williams was recalled in rebuttal he stated
that he did not have the interview before the notes were
signed with Dr. Rutledge as testified to by Dr. Rutledge, and
was then asked by counsel for the bank: "And he spoke of
another interview, I think, after the maturity of the notes,
in which you told him that the notes had been paid?", to
which he replied, "No, sir; I had no such interview. On
the contrary, he had been notified that they had not been
paid." The Court sustained the objection of the defendants
to that part of the answer, "On the contrary," etc., and the
plaintiff excepted. The witness was then asked: "He fur-
ther says, and this you must know, that you told him the
notes were paid?" and he replied, "No, sir; I never told
him—I did not tell him any such thing. On the contrary
the only interview I had with him on the subject was when
I told him the notes were not paid, and that we held them
because they had not been paid, and we could not recognize
a payment to Mr. Hoffman which he claimed, and in that
talk he never claimed that he had any interviews with me on
the subject." The plaintiff got the benefit of the evidence
to the effect that the president of the bank told Dr. Rutledge
that the notes had not been paid. The cashier of the bank
had testified that he sent a notice to the defendants on the
20th of May, 1896, that the notes were about due, and Mr.
Williams testified in chief that the date, 20th of May, 1896,
on the back of the notes, according to the usual course of
business, indicated that the defendants were notified on that
day that the bank held the notes. There is nothing in the

record to indicate or suggest that Mr. Williams had knowledge of any other notice to the defendants that the notes had not been paid, and the plaintiff could not therefore have been injured by the exclusion of that part of the answer referred to.

On cross-examination the witness stated that the notes were not left at the bank "not as real security, but to give some respectability to the large loans that Mr. Hoffman, as a director, had gotten from the bank;" that that was not the transaction; that Mr. Hoffman had not borrowed from the bank in excess of the amount the law allowed him to borrow; that the capital stock of the bank was $50,000.00; that he never said that Mr. Hoffman had borrowed $18,000 from the bank; but that what he did say was that Mr. Hoffman "was liable to the bank in one way or the other," to the amount of about $18,000; and the witness also said that he was not interested as president of the bank in seeing that its record showed as much collateral as possible to bolster up Mr. Hoffman's indebtedness. He was then asked by counsel for the plaintiff: "Mr. Offutt has asked you about Mr. Hoffman's large indebtedness to the bank. Will you explain how that was?" and he replied: "It was made up of a certain amount of direct loans which were authorized to be made under the law, which would be 10% of our aggregate capital and surplus, which at that time would be something like $18,000, and it was also made up of commercial paper and paper of makers that he had taken to his own order and which were endorsed by him, and upon which he was liable to us as endorser." Counsel for the plaintiff asked him if that was unusual, and he replied: "Not at all." To the last question and answer the defendant objected, and the twenty-second exception is to the action of the Court in sustaining the objection. It does not appear how the plaintiff could have been injured by this ruling. Mr. Williams had fully explained how the notes were held by the bank; that the amount of Mr. Hoffman's liability was within the require-

ments of the law, and that it was made up of "direct loans" to him, and commercial paper on which he was liable as endorser, as showing that there was nothing unusual in the transaction of the bank in regard to the notes in suit, and we do not perceive how the evidence referred to could have given any additional weight to his testimony, or how its exclusion could have prejudiced the plaintiff.

The only remaining exception is to the ruling of the Court on the prayers. By the plaintiff's first prayer the jury were instructed that if they found the execution of the notes; that they were discounted by the plaintiff for Mr. Hoffman a few days after their respective dates; that on or about the 6th day of May, 1896, Mr. Hoffman took up the notes and then pledged them to the plaintiff "as collateral to his other indebtedness to it," and that of said indebtedness there remains due to the plaintiff a sum in excess of the principal and interest of said notes, then the plaintiff was entitled to recover, "unless the jury find that the defendants delivered to said Hoffman for sale certain canned goods sufficient to pay said notes, and further find that the plaintiff knew of such arrangement and assented thereto; and the burden was upon the defendants to show said notice and assent by the greater weight of evidence." By the plaintiff's third prayer the jury were instructed that no agreement the defendants may have had with Allen Hoffman with reference to the delivery and application of canned goods covered by the bill of sale mentioned in the evidence, if they find such, was binding upon the plaintiff, unless the jury find that said agreement was made known to the president of the bank, and by him approved and assented thereto."

The Court below granted the defendant's second, third and fourth prayers. The second and third, which the reporter is requested to set out in his report of the case, are not more favorable to the defendants than the instructions granted at the instance of the plaintiff, and the only objection made by the appellant to any of the defendants' prayers

is that there is no evidence to support them, and that the Court erred in overruling its special exceptions on that ground. Learned counsel insist that there was no evidence to show that the notes were paid with the proceeds of the sales of the canned goods. It seems only necessary in this connection to refer to the cross-examination of Dr. Rutledge where he said: "After the goods had been shipped I went to see if the drafts had come back, and if the notes had been paid, and Mr. Williams told me that the notes had been settled by Mr. Hoffman. That the notes had been settled by the drafts for the canned goods." Without attempting to further discuss the evidence, we think the testimony to which we have just referred, as well as the other testimony to which we have already alluded fully answers the plaintiff's exception. In disposing of such questions the Court does not, of course, consider the weight of the evidence, which is a matter exclusively for the jury and as to which the Court should refrain from any comment, as it is only concerned with the question of the legal sufficiency of the evidence.

After a careful examination of the record and all the authorities relied upon by the appellant we find no reversible error in any of the rulings of the Court below, and the judgment must be affirmed.

*Judgment affirmed, with costs to the appellee.*