## ANNA ARNOLD JUSTIS vs. JOHN C. C. JUSTIS.

*Advancements—Will Giving Property According to Statute of Distributions—Evidence—Competency of Witness.*

A testator, who was survived by a son and the daughter of a deceased son, devised his estate to "such persons and in such shares as the same would go under the Maryland laws of descent and distribution in force at my death in case I had died intestate." Testator's granddaughter claimed that certain sums of money which had been given by the testator in his lifetime to the son should be treated as advancements and deducted from his share of the estate. The evidence showed that the testator had given large amounts to all of his children before making this will which expressly revoked a former will in which reference to advancements was made. *Held*, that the intention of the testator was that his estate should be equally divided among his descendants without regard to his gifts to them in his lifetime.

Code, Art. 93, sec. 125, provides that in the distribution of the personal property of a person dying intestate, if any child or descendant of him shall have been advanced by settlement or portion, the same shall be reckoned in the share of that child in the surplus of the estate. *Held*, that this provision has no application in this case where there is no intestacy but a will and the legatees take under the will and not under the Statute of Distributions.

For the same reason, Code, Art. 46, sec. 31, relating to the descent of land when the owner dies intestate is also inapplicable.

*Held*, upon the facts, that the claim of the testator's son to a certain sum of money as his undrawn share of the profits of a business in which he and the testator had been partners many years before the latter's death is shown to be untenable.

Under the Act of 1902, ch. 495, an original party to a contract is a competent witness, although the other party thereto be dead.

Where a testator had conveyed land to the wife of his son for her life' with remainder to their children, such property cannot be treated as an advancement to the son.

Cross Appeals from Circuit Court No. 2, of Baltimore City (Dobler, J.)

The cause was argued before McSherry, C. J., Briscoe, Page, Boyd, Pearce, Schmucker and Jones, JJ.

*J. Wilson Leakin*, for Anna Arnold Justis.

The lower Court decreed that the advancement was to be taken into account against the share of J. Christopher C. Justis. On a casual reading of the will it is submitted that this is only in conformity with its plain terms: "Such persons and in such shares * * * as if I had died intestate," plainly points to the shares being modified, as they would have been, if there had been no will at all, by charging each with the advancements which had been made, so as to produce entire equality. This is the substantial ruling in the case of *Medley* v. *Williams*, 7 G. & J., pp. 70 and 71, where the Court decides that in a case where the same "quantity and quality of estate is devised as the devisee would have acquired by descent, the devisee takes by descent and not by purchase. * * * If Joseph Williams had omitted the clause in his will by which the residue of his estate is given to his daughter, he would clearly have been intestate as to the land now claimed; * * * and, therefore, the will is so far inoperative that a case of partial intestacy therefore exists." (Here is a total intestacy.) This case was affirmed in the case of *Mitchell & Mitchell*, 21 Md. 254, and is conclusive of the question.

In 2 *Woerner, American Law of Administration*, sec. 553, he says: "The testator may, however, provide that his estate shall descend as if he had died intestate, in which case advancements are to be reckoned as if there were no will," citing

*Stewart & Stewart, Law Reports,* 15 Chancery Division, 545; *Raiford & Raiford,* 6 Iredell's Equity, 499.

The cases cited on the other side are clearly distinguishable from the case at bar. *DeCaumont* v. *Bogert,* 36 Hun., was a case where the testator intended inequality and made the gifts in his lifetime for the express purpose of giving more to some than to others, as he declared to his solicitor. This clearly rebutted the presumption of advancement.

The bill was filed against John C. C. Justis, executor of William S. Justis and John C. C. Justis, individually, for the purpose of having the advancement charged in the distribution of both the real and personal estate of William S. Justis. John C. C. Justis thereupon tendered himself as a witness on his own behalf and on behalf of the executor, who adopted all his defences, for the purpose of showing that at the time the advancement of the twenty-four thousand dollars was made to him, his father owed him a considerable sum of money. Was he a competent witness, the father being dead, for the purpose of showing such a debt? By the Act of 1902, it is provided "in actions or proceedings by or against executors administrators in which judgments or decrees may be rendered for or against them, no party to the cause shall be allowed to testify as to any transactions had with, or statements made, by the testator or intestate." This Act enlarges the scope of the prior Act in that it applies to any transactions with or statements made by the testator or intestate; the former law limited it to a contract or cause of action with the testator or intestate, and therefore the present Act, it would seem, tended to extend the prohibition to *transactions* or *statements.* The testimony of the defendant (excepted to) was his version of certain interviews and transactions with his deceased father.

The paragraph of the decree which restricted the accounting to the personal estate of the deceased, because the advancement was only of personalty (paragraph 4), was not argued before the Court below, and no authorities were consulted by him in that particular. This ruling is in the teeth of the decision of CHANCELLOR JOHNSON in the case of *Ex-*

*parte Notley Young*, 3 Maryland Chancery, 465-466.    In that case the personal estate was insolvent, and an attempt was made to exclude an advancement of personalty on the ground that the personal advancement could only be charged against personal estate.. CHANCELLOR JOHNSON, in overruling this objection, said that "a Court of equity would not allow itself to be baffled by objections of this technical nature, but that it would distribute the estate in accordance with the principles of equity, the most prominent which was equality," and cited in his decision two authorities in the Court of Appeals.    This decision has, so far as is known, been followed ever since.    In *Love* v. *Dilley*, reported in 61 and 64 Md., it was not intimated that the advancement of personalty should be limited to the personal estate.    Indeed, in the accounts which appeared in the record, in the case in 64 Md. the advancement of realty is treated simply as the equivalent of a figure to find out the total advancements while the funds derived from the personalty, the rents of the realty and the sales of the realty as a common fund from which the gross advancements were to be deducted.    And the language of JUDGE MILLER in delivering the opinion of the Court of Appeals in 61 Md. 603, certainly is in accord with the decision of CHANCELLOR JOHNSON.    It might otherwise be that one child might have a very large advancement in personalty, a man dying leaving an immense real estate; the one having had his advancement would get a double portion merely on account of the quality of the estate which had been left.    This is so manifestly inequitable that it is submitted that, in the language of the Chancellor "A Court of equity will not allow itself to be baffled thereby."

It is submitted: *First.* That the advancement of twenty-four thousand dollars to his son is proven by overwhelming evidence. *Second.* That as the estate is to be enjoyed "in the shares and by the persons who would have enjoyed the same had he died intestate" that the advancement is to be charged to Christopher. *Third.* That the advancement is to be charged under the ruling of CHANCELLOR JOHNSON, against

not only his share of the personality, but his share of the realty as well. *Fourth.* That the declarations, both written and oral, of Mr. W. S. Justis are admissible in evidence to prove the intention as to the advancement. *Fifth.* That J. C. C. Justis is not a competent witness under the Act of 1902. *Sixth.* That there is no sufficient evidence of any indebtedness due by W. S. Justis to J. C. C. Justis in 1878 to countervail the advancement of twenty-four thousand dollars before referred to.

*Joseph C. France,* for J. C. C. Justis:

The law of advancements not applicable. The Statute of Distribution (1798, ch. 401; Code, Art. 93, secs. 119–125), provides : "When all the debts of an intestate    *    *    *    shall have been discharged    *    *    *    the administrator shall proceed to make distribution of the surplus as follows:    *    *    If there be a child or children and a child or children of a deceased child, the child or children of such deceased child shall take such share as his, her or their deceased parent would (if alive) be entitled to    *    *    *    provided, that if any child or descendant shall have been advanced by the intestate by settlement or portion, the same shall be reckoned in the surplus; and if it be equal or superior to a share, such child or descendant shall be excluded."

It is settled law in this State that the provisions of this statute have no application except to the case of total intestacacy—that is to say, if there is a will which operates on any part of the testator's property, the statute does not apply. *Stewart* v. *Pattison,* 8 Gill, 355, and Editor's note. In *Hayden* v. *Burch,* 9 Gill, 63, the will was a very meagre one and did no more than confirm the freedom previously bestowed upon certain slaves by a deed of manumission. "No executor is named nor is reference made to any other property which he owned at that time." The Court held that if the will passed any title to the slaves, it was a "partial distribution of his property which avoids the intestacy contemplated by the Act of 1798. By that Act the surplus is constituted on the

whole estate after the payment of debts and the advancement charged is directed to be reckoned in the surplus. We are not at liberty to depart from the express provisions of the Act which it is here manifest, contemplates a total intestacy." The same doctrine is repeated in *Pole* v. *Simmons*, 45 Md. 250, and in subsequent cases.

By its express terms, the will in controversy disposes of "all the rest and residue of my estate * * * whether now owned or hereafter acquired by me," so that it cannot be said that there was any intestacy. But the Court below held that since the distributees took under the will precisely what they would have taken had no will been made, *therefore* that portion of the Statute of Distribution which relates to advancements applies. This is a *non sequitur*. It is true that the property is given to the persons and in the shares (*i. e. per stirpes* and not *per capita*) prescribed by the statute; but the will operates only upon the property of which the testator died possessed, and not (as the statute does) upon what he had previously given away. The doctrine of advancements as contained in our Act comes with modification, from the statute of Charles II; and the received interpretation of the statute is that it carries out the intention of the deceased and accomplishes for him what he would have done had he made a will, namely the prevention of inequality among children. But the mere making of a will negatives this intent, even if it does no more than confirm a deed of manumission. *Hayden* v. *Burch*, 9 Gill, 63. If a testator having but two children for his only distributees, should bequeath his estate to them in equal shares, it would not be contended that the statute applied. Moreover, it is difficult to see any purpose or intent a testator could have for making such will as that under discussion, except to prevent the question of advancements from arising. The precise question has been decided, so far as an examination has revealed, in only two cases. *DeCaumont* v. *Rogert*, 36 Hun. 382." In *Brown* v. *Brown*, 2 Iredell Eq. 309, the will stated that the property was to be "disposed of as the law directs." It was held that this was a sufficient disposition to

prevent intestacy and that advancements need not be brought into hotchpot. And see *Am. & Eng. Ency. of Law*, 2 ed., vol. 1, p. 763. It is respectfully submitted therefore that the doctrine of advancements has no application to this case because the property which the testator gives to be divided among the persons and in the shares prescribed by the Maryland Law of Descent and Distribution, is the property he "now owns or may hereafter acquire:" and not that which he had previously given away and did not own. The distributees take, not under the statute but under the will, and you cannot, without violating the testator's intention, reckon anything in the surplus where he has failed to insert hotchpot directions in his will.

The complainant based his contention below upon the proposition that where one takes as devisee the same estate that he would have taken as heir at law, he is in by descent and not by purchase. This is a rule of real property (now changed in England by the Statute of 3 and 4, William IV; *Strickland* v. *Strickland*, 10 Sim. 374); it has nothing to do with personalty, or with the doctrine of advancements; and it expressed the policy of the feudal law to favor the lord and to preserve to him the rights of wardship, marriage and relief which he had over the heir but not over a devisee. This feudal rule was applied in the ejectment case of *Medley* v. *Williams*, 7 G. & J. 45, which the learned counsel cited below as his one authority. But the question here presented did not arise in that case, and the rule itself has been practically repudiated by later decisions of this Court. *Gilpin* v. *Hollingsworth*, 3 Md. 196; *Donelly* v. *Turner*, 60 Md. 84.

As inferentially in his favor, counsel cited the cases of *Stewart* v. *Stewart*, L. R., 15 Ch. Div. 539, and *Raiford* v. *Raiford*, 6 Iredell Eq. 490. In the latter, the instrument was a deed of trust and not a will, and the case in no way affects the decision in *Brown* v. *Brown*, 2 Iredell Eq. 390, which is expressly against the contention. In *Stewart* v. *Stewart*, the testator's will contained hotchpot directions and the question was whether they applied to a lapsed share that fell into the resid-

uary estate.   There are in this opinion some expressions of
the Master of the Rolls in favor of the appellant's contention;
but the decision is in direct conflict with our law in this; that
it denies the distinction between total and partial intestacy as
laid down in *Hayden* v. *Burch*, 9 Gill, 63.   The Master of the
Rolls overrules the earlier English view upon which our law
is based, namely that expressed in *Walton* v. *Walton*, 14 Vesey,
318.   There the Chancellor said: "I conceive the provisions
in the Statute of Distribution apply only in the case of actual
intestacy and where there is an executor and consequently a
complete will, though the executor may be declared trustee
for the next of kin, they take as if the residue had been actually
given to them.   Therefore the child advanced by her father in
his life, could not be called on to bring her share into hotch-
pot."

*Assuming that advancements are chargeable notwithstanding
the will.*   It is well settled that the intention of the parent, as
it existed *at the time of his death* is what must be sought for.
"The donor can alter the character of a gift or conveyance so
as to enlarge the rights and privileges of the•recipient, but not
so as to restrict them.   Hence a father has the undoubted
right to change an advancement into a gift   *   *   *   and it
is proper to prove all facts and circumstances showing the
donor's intention or from which it might be inferred." *Woerner
on Administrations*, secs. 566, etc.   In *Jacques* v. *Swasey*, 153
Mass. (reported with notes in 12 L. R. A. 556), a testatrix left
to her companion a legacy of ten thousand dollars.   Subse-
quently, she advanced the sum of three thousand dollars and
took a receipt showing that this amount was in partial satis-
faction of the legacy and was to be deducted therefrom.   Sub-
sequently, a new will revoking all former wills was made and
a legacy of ten thousand dollars was given to the companion.
It was held that the legatee should receive the full amount.
Moreover the following propositions are settled :   (1.) The
nature of the transaction may be gathered from the contempo-
raneous declarations of the parent; from the contemporaneous
or subsequent admissions of the child; and in exceptional

cases (such as *Dilley* v. *Love*, 61 Md. 609), from the subsequent declarations of the parent.   (2.) The amount of the gift must be proven independently of the declarations of the donor. (3.) If at the time of an alleged advancement, there is an existing indebtedness from the donor to the donee, the law raises the presumption that the gift was intended to cancel the debt. *Glover* v. *Patten*, 165 U. S. 406; 1 *Pomeroy's Eq.*, sec. 540.

*Second.* Applying the rules above stated to the evidence in this case, it is clear: (1.) At the time of the alleged gift, the son was entitled to some thirteen or fourteen thousand dollars of undrawn profits.   The bill of complaint, before it was amended after the opinion below was delivered, averred an equal partnership between father and son in the profits; this, in the absence of proof to the contrary, would be the presumption of law; the way in which the title to the Schofield property was taken by the direction of the testator, together with the letters and bill heads of the firm and the books of the business, all establish the same fact.   The further fact that there was no separate capital account in the name of the son, has no significance when the relationship of the parties is borne in mind.

Advancements not chargeable against realty.   It is submitted that the Court below correctly ruled on this point.   The Act to direct descents (Code, Art. 46, sec. 31), provides : "Every child or children of the intestate or their issue having received from the intestate any real estate by way of advancement, may elect to come into partition with the other parceners on bringing such advancement or the value thereof at the time such advancement was received, into hotchpot with the estate descended; but such child or children or their issue shall not be entitled to claim a share by descent without bringing such advancement or the value thereof as aforesaid, into the common stock or hotchpot if there be another child or children unprovided for."   It is evident that these provisions have no connection with the Statute of Distribution passed in 1798.   On this question, it is true that CHANCELLOR JOHNSON, *In re Notley Young*, 3 Md. Ch. 349, intimates a con-

trary view. ｐ But the cases upon which the learned Chancellor relies do not bear out his reasoning, and in an important particular his decision was overruled in *Maus* v. *McKellip*, 38 Md. 236. The question does not appear to have been subsequently raised in this State, and the only argument that can be made upon it is that the two statutes are entirely distinct inp oint of time and subject-matter.

The bill was properly dismissed as to the Park avenue house. In this property the defendant has not legally or equitably one dollar of interest. He had nothing to do with the form of the gift and the law is clear: (1.) That an advancement from a father to his daughter-in-law is not an advancement to the son where, by statute, a married woman holds her property free from the control of her husband. (2.) That a gift to a grandchild made in the lifetime of the parent, is not an advancement to the parent. *Woerner on Administrations*, sec. 554. Mrs. Justis, the wife of the defendant, is dead and she had but a life interest in the property.

BRISCOE, J., delivered the opinion of the Court.

This controversy involves a construction of the last will and testament of William S. Justis, late of Baltimore City, deceased, who died sometime in the year 1898. The parties to the suit are uncle and niece, and the only descendants of the testator. The will is dated September 26th, 1891, and after directing his debts and funeral expenses to be paid, the testator provides as follows: "All the rest and residue of my estate, real, personal and mixed, whether now owned or hereafter acquired by me I give, devise, and bequeath unto such persons and in such shares as the same would go under the Maryland Laws of Descent and Distribution in force at my death, in case I had died intestate. I hereby nominate and appoint my son, John C. C. Justis, executor of this my will and again revoke expressly all former wills by me heretofore made."

The bill of complaint was filed on the 30th day of December, 1899, in the Circuit Court No. 2, of Baltimore, by

Anna Arnold Justis, a granddaughter against John C. C. Justis, a son of the testator, and the executor named in the will. It charges in effect that the testator made in his lifetime certain advancements to his son, and that under a proper construction of the will, his share should be charged with those advancements, amounting to the sum of thirty-one thousand and five hundred dollars. The advances to the son are stated to be, *first*, the sum of twenty-four thousand dollars, turned over to the son on the first day of May, 1878, by way of one-half interest in the business of the firm of Justis & Armiger, Baltimore.

*Second.* A conveyance on the 3rd of March, 1880, of a house No. 1425 Park avenue valued at $7,500 to Louisa M. Justis, wife of Christopher, for life, with remainder to their children, and *third*, one undivided half of certain leasehold property No. 822 W. Baltimore street, which the son retains as his own property.

The prayer of the bill is for a partition of the testator's real estate, a distribution of the personalty, an accounting by the defendant, and the share of the defendant shall be charged with the advancements, as stated in the bill.

The defendant's answer expressly denies that he received the money and property as charged in the bill by way of advancement and contends that the law of advancement has no application to the case.

The case was heard upon bill, answer and proof, and from a decree of the Court below, allowing certain advances the plaintiff and defendant have each appealed.

In the view we take of the case it will not be necessary for us to review all of the questions raised on the appeals because we are of the opinion, under the facts and circumstances of the case, and according to the intention of the testator, the property and money bestowed upon his children in his lifetime are to be treated as gifts without a view to a portion or settlement and not an advancement. All the cases in this State hold "that whether a gift takes the character and legal properties of an advancement or those of an absolute gift without a view to

a portion or settlement, depends on the intention of the donor, and that intention may be ascertained by parol evidence of the donor's declarations at the time of executing the conveyance or making the gift, or of the donee's admission afterwards or by proof of facts and circumstances from which the intention may be inferred. *Parks* v. *Parks*, 19 Md. 323; *Graves* v. *Spedden*, 46 Md. 527; *Cecil* v. *Cecil*, 20 Md. 153.

The manifest intention of the testator in making the will here in dispute was to preclude the question of advancements and to provide that the residue of his estate real and personal should be equally divided between his surviving descendants. By this will he expressly revoked the earlier wills he had made, in which a different provision had been made for his children and in which the subject of advancements was considered by him. At the time of making the last will many changes had taken place in his family, and he was survived by only a son and the daughter of a deceased son. His wife died in 1891; a son, Aquilla, died in May, 1898; Wm. S., in 1873, Charles in 1868, and Rufus in 1890. He had been liberal and generous to his children and according to the testimony in the case had given large sums to his son Christopher, and also to his son William, the father of the appellant Anna. In *Dilley* v. *Love*, 61 Md. 603, it is distinctly held, that in all cases in which the question arises whether payments made by a father, who afterwards died intestate to or for the benefit of his children are to be treated as advances and in that respect to be set off in making an ultimate division of his property, regard must be had to the surrounding circumstances. The very principle upon which advances are to be set off by way of hotchpot is that of endeavoring as nearly as possible to do that which is equal justice among all the children of the dead man.

Looking then to the facts and circumstances, as disclosed by the record in this case, we are of the opinion that the gifts made by Mr. Justis to his children were not intended as advancements, to be charged against them in the distribution of his personal estate or in the partition of his real estate, and that neither the provisions of the Code, Art. 93, sec. 125 (the Statute of Distribution), or Art. 46, sec. 31 (the Act to Direct

Descents), relating to the subject of advancements have any application to the case.

Nor do we concur in the conclusion reached by the Court below that the claim set up by the appellee, Christopher, for one-half of the profits of the business of the firm of Wm. S. Justis & Son, for the years 1870 to April 30th, 1878, should be allowed as undrawn profits of the firm. The evidence does not support such a contention. The declaration of the father to the claimant, on the 30th of April, 1878, "now Christopher we are square" is conclusive upon the question of indebtedness between them. This declaration was made on the date of the formation of the partnership of Justis and Armiger, and at the time when the gift of $24,000, was made by the father to the son.

It is objected, however, that the defendant, being an original party to the cause of action was an incompetent witness, and this objection was sustained by the Court below. The testimony was taken since the Act of 1902, ch. 495, which repealed and re-enacted sec. 2 of Art. 35 of the Code. It appears that the Act omitted the disqualification of an original party to a contract or cause of action when the other party is dead. Under this Act the defendant was a competent witness. *Duckworth* v. *Duckworth*, 98 Md. 92.

There was no error in the dismissing of the bill as to the Park avenue house. The property was conveyed to Mrs. Justis, the wife of the defendant. She had but a life interest in the property, and is now dead.

For the reasons we have given the decree of the Circuit Court of Baltimore City will be reversed and the cause remanded for further proceedings, to the end that the property of the testator may be distributed and divided equally between the appellant and appellee according to the intention of the testator, as expressed in his will. The costs to be paid out of the estate.

> *Decree reversed and cause remanded*
> *for further proceeding*. *Costs to be*
> *paid out of the estate.*

(Decided February 17th, 1904.)