SHEELER *v.* SHEELER

[No. 155, October Term, 1954.]

*Decided May 16, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William L. K. Barrett* and *Francis T. Peach*, with whom was *Anothony J. Nolan* on the brief, for the appellant.

*Joseph S. Kaufman* and *John W. Hessian, Jr.*, with whom were *Max R. Israelson* and *Smalkin & Hessian* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Nellie Swann Sheeler, appellant, from a decree awarding the proceeds of two life insurance policies to James L. Sheeler, appellee.

On January 29, 1954, the appellee filed a bill of complaint against the appellant alleging the death of his father, Alexander J. Sheeler, on or about January 27, 1953; the issuance of the insurance policies as hereinafter set out; an oral agreement between him and his father; and the payment of the policies to the appellant. He alleged that he was legally and equitably entitled to the full amount of said insurance policies. He prayed, among other things, that the appellant be ordered to account to him for all monies and payments received by her under the aforesaid policies. By decree the chancellor, after taking testimony which follows, awarded the appellee the proceeds of said policies. From that decree appellant appeals.

Testimony in the case shows that Alexander J. Sheeler, for many years prior to his death on January 27, 1953, was engaged in the business of manufacturing and renovating men's hats in Baltimore City. The appellee, James L. Sheeler, the only child of the said Alexander, started to work for his father in said business in October, 1924. James testified that he continued in such employment

until January 1, 1932, at which time a partnership was formed between him and his father. It is admitted by the appellant that this partnership began at least as early as 1940. This partnership continued uninterruptedly until January 27, 1953, when Alexander died. The parners shared equally the profits and expenses of said business.

Prior to the formation of this partnership, Alexander purchased two life insurance policies, one being a policy dated July 1, 1920, issued by the Acacia Mutual Life Insurnace Company, which insured his life in the amount of $5,000.00. The other policy, dated July 27, 1925, was issued by the Prudential Life Insurance Company of America, which insured his life in the amount of $5,-570.00. Both of these policies were made payable to Edith Sheeler, the first wife of Alexander and the mother of the appellee, as the original beneficiary. Edith Sheeler died on February 23, 1933. Prior to 1933, James Sheeler had purchased a life insurance policy from the Massachusetts Mutual Life Insurance Company in the amount of $2,500.00 made payable to his father, Alexander Sheeler, as beneficiary.

James L. Sheeler, appellee, testified in effect that after his mother's death and sometime in 1933 he and his father discussed partnership insurance. They were advised by an insurance agent that, at the ages of Alexander and James, the premiums would be quite high. They, therefore, decided to use the two insurance polices of Alexander and the one insurance policy of James as partnership insurance. They agreed that this was to be accomplished by Alexander making his son, James, the beneficiary of his two policies and James retaining his father as beneficiary on his policy. Following the agreement testified to by the appellee, on August 26, 1933, Alexander changed the beneficiary in the Acacia policy from the name of his deceased wife to that of the appellee. On or about December 9, 1934, Alexander married the appellant, Nellie Swann Sheeler, as his second wife. On December 17, 1936, Alexander changed the beneficiary in the Prudential policy from his said

deceased first wife's name to that of the appellee. These policies were kept in a tin box in the partnership office in Baltimore where all the other partnership papers were kept. The key to this tin box was kept in another box to which both partners had access. Checks were offered in evidence to prove, and the chancellor found, that the premiums on these three policies were paid from the partnership funds and were not charged to the individual accounts of the partners. The appellee testified that in August, 1952, while he was away on vacation, his father went to the tin box in the office where all the partnership papers were kept and took the Acacia and the Prudential policies. The beneficiary on these were then changed from the name of James L. Sheeler to Nellie Swann Sheeler. James Sheeler did not know that the beneficiary in these policies had been changed from his name to that of his stepmother until he was so informed by her, the day after his father's death. The appellant testified that she did not know about these insurance policies until they were mailed to her about the latter part of September, 1952.

In his will, dated December 17, 1952, Alexander Sheeler stated that he had made provision during his lifetime for his wife's security and well being after his death. He named Richard A. McAllister as his executor. After the payment of all his debts, he bequeathed unto his wife all the household effects, all his personal property and his automobile. He devised and bequeathed all the rest and residue of his estate, including all his interest in the partnership, to his son, James, provided James paid off the balance of the mortgage on the house formerly occupied by Alexander and Nellie as their home and which Nellie, after his death held as the surviving tenant by the entirety, and that James further pay to Nellie the sum of $35.00 per week in weekly installments for a period of one year following his death. Testimony showed that the balance due on this mortgage at the time of Alexander's death was $877.50.

Richard A. McAllister, Esquire, a practicing attorney, testified that he had known Alexander Sheeler for many

years. He said that in December, 1952, Alexander consulted him for the purpose of drawing his will, which he drew according to directions from Alexander. He said that Alexander at that time said he had adequately taken care of Nellie by way of insurance. He did not disclose the amount of the insurance or the terms of it. "It was merely that comment."

After Alexander's death the appellant presented the insurance policies to the insurance companies, who upon receipt of proof of death, paid the face values of said policies to the appellant.

The appellant claims that the testimony of the appellee was not admissible for the reason that he should not have been allowed to testify as to agreements or transactions with his father, who was deceased. This testimony was admitted over that objection. She relies on Code, 1951, Article 35, Section 3. This provides in part as follows: "In actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent *as such* in which judgments or decrees may be rendered for or against them * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator, intestate, ancestor, or party so incompetent to testify * * *." (Italics supplied). This proceeding was not brought "by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent *as such*" but is an action by a surviving partner as the once named beneficiary in insurance policies against the last named beneficiary in those policies. Appellant contends that the personal representative of the estate of Alexander Sheeler should have been made party to this proceeding. It is evident that the estate of Alexander had no claim or interest in these policies. The proceeds went to either the appellant as beneficiary or the appellee as beneficiary. As the estate had no interest in the policies, we are of the opinion that the provisions of Article 35, Section 3, *supra*, did not make the testimony of the appellee inadmissible. *Duckworth v. Duckworth,* 98 Md. 92, 98, 56 A. 490; *Justis v. Justis,* 99 Md. 69, 81, 57 A.

23; *Harford National Bank v. Rutledge*, 124 Md. 46, 54, 91 A. 790; *Weir v. Baker*, 181 Md. 249, 29 A. 2d 269.

It has been held in this State, as elsewhere, that, unless forbidden by statute or contract provisions, the rights of an insured under a life insurance policy may be assigned by parol if there is delivery of the policy to the assignee. *Dale v. Brumbly*, 96 Md. 674, 54 A. 655; *First National Bank v. Thomas*, 151 Md. 241, 134 A. 210, 47 A. L. R. 730; *Michaelson v. Sokolove*, 169 Md. 529, 182 A. 458; *Ratsch v. Rengel*, 180 Md. 196, 201, 23 A. 2d 680; *Bimestfer v. Bimestefer*, 205 Md. 541, 109 A. 2d 768. There is no doubt that these insurance policies were delivered and kept with the other partnership papers in a place to which no one had access except the partners, the beneficiaries named in said policies.

The appellant contends that the testimony given as to the agreement was vague, indefinite and uncertain and was not corroborated. Of course, such an oral agreement should be clear and convincing. *Weaver v. King, Adm.,* 184 Md. 283, 286, 40 A. 2d 511, and cases there cited. The chancellor in the opinion in this case stated that he believed the testimony of James L. Sheeler as to the partnership agreement as to the insurance policies, and that Alexander lacked the right thereafter to change the beneficiary. Among other things, he said the following: "The testimony from the son is that they agreed that that would be turned into a partnership asset instead of obtaining new insurance which would have been increasingly expensive and perhaps unobtainable, Sheeler, Sr. would use his insurance as a partnership asset, name his son beneficiary, and that his son, in turn would do likewise with the only policy he had, a twenty-five hundred dollar policy, obviously only of a face value of one-fourth of the father's contributon, but, the father's value to the business was easily at that time four times the value of that of the son, and the disparity in the insurance contribution is, therefore, understandable, and doesn't mitigate at all. The testimony is uncontradicted that at least from 1940, and uncontradicted, actually, from 1933, all of the premiums for the father's policy

were paid from the partnership business. * * * He [James Sheeler] did not seem to be evasive. He seemed to be completely frank, expresses himself perhaps a little oddly which would not appear in the cold printed record, but mannerisms of one kind or another, but, on the whole, his testimony which I now hold admissible, was to me clear and convincing. And, it seems to me, the proof positive of the fact that this insurance became by agreement a partnership asset, is found in the will, that Mr. Sheeler, Sr., married in 1934, and for eighteen years continued these policies with his son as beneficiary rather than at once changing the beneficiary to his wife, if he had known and realized that he had no legal or moral right to do so; and Mrs. Sheeler was never aware of the existence of the policy until she received the endorsement through the mail."

The appellee is corroborated by the fact that very shortly after the time the oral agreement is alleged to have been made, Alexander actually did assign the Acacia policy to him and two years after Alexander had married the appellant he assigned the Prudential policy to James, who remained as beneficiary under those policies for over seventeen years of the period that Alexander was married to the appellant. The agreement is further corroborated by the fact that, after James was married and had two children, Alexander remained as beneficiary on the Massachusetts Mutual policy, if living at the time of James' death. Furthermore, the premiums were paid out of the partnership funds and not charged to the individual partners. Although the policies were not carried as assets on the partnership books, there appears to have been no partnership books kept for this partnership. Compare *Price v. McFee*, 196 Md. 443, 77 A. 2d 11. Furthermore, the policies were used as securities for loans to the partnership by the insurance companies for partnership purposes, the interest and principal of said loans being paid from partnership funds. If Alexander had survived James, Alexander would have received the proceeds of the Massachusetts Mutual policy as the named beneficiary. Here, the chancellor had the

atmosphere of the trial and the opportunity to observe the appearance of the witnesses. If the record left us in doubt, we should not disturb his findings of fact. *Burger v. Burger,* 204 Md. 495, 500, 104 A. 2d 923.

We are, therefore, of opinion that there was ample testimony to support the finding of the chancellor that the oral agreement was made as testified to by the appellee. Thereby the insurance policies here in dispute became partnership assets payable to the surviving partner as the named beneficiary in the policies and thereby Alexander Sheeler lost his right to change the beneficiary from the name of the appellee to that of the appellant. The decree will be affirmed.

*Decree affirmed, with costs.*