## URQUHART *v.* ALEXANDER AND ALEXANDER, INC. ET AL.

[No. 72, September Term, 1958.]

*Decided December 22, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John H. Skeen, Jr.,* with whom was *William A. Skeen* on the brief, for appellant.

*Robert B. Bair,* with whom were *J. Crossan Cooper, Jr.,* and *Venable, Baetjer & Howard* on the brief, for Clifton F. Wiedlich and Vivien C. Urquhart, appellees.

No brief and no appearance for Alexander and Alexander, Inc., appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal by Marion T. Urquhart (the wife or widow) from an order of the Circuit Court of Baltimore City dismissing her bill against Alexander and Alexander, Inc., and others, for the reformation of a life insurance contract, and, in the alternative, for a declaration that the proceeds were held in trust for her.

In October of 1952 John A. Urquhart (the insured or deceased) borrowed $5000 from Alexander and Alexander, Inc. (the employer or creditor), which was engaged in selling insurance, in order to make the initial cash payment on account of a consent judgment for $15,000 entered by the United States District Court for the District of Maryland against him in favor of Vivien C. Urquhart and Clifton F. Weidlich (the divorced wife of the insured and her attorney, hereinafter referred to as the judgment creditors or intervenors). The balance of the judgment, by its terms, was required to be paid in monthly installments of $125 each. To secure the repayment of the loan to the employer, the insured arranged, through the employer, for a five-year convertible term policy on his life with the Manufacturers Life Insurance Company (the insurer) in an amount equal to that of the

loan, and designated his employer as the sole beneficiary. At the same time arrangements were made whereby semi-monthly payments of $50 each were to be deducted from his salary until the debt due his employer was paid in full.

The policy, issued October 30, 1952, was delivered to the employer, who kept custody of it until the death of the insured on March 5, 1957. Premiums on the policy were paid by the wife out of funds derived from the salary of the insured. The repayment of the loan to the employer was completed on December 31, 1956. On the date of the death of the insured the unpaid balance of the judgment was $4750. He left a will in which he directed the payment of his debts and then devised and bequeathed his estate to his wife absolutely.

The insured reserved the right "from time to time by a declaration in writing under his hand [to] appoint a beneficiary or beneficiaries and * * * [to] alter or revoke any prior designation and * * * [to] apportion or reapportion the insurance monies," but he did not exercise any of such rights. He also had the privilege, under the terms of the policy, to convert it to a new policy on another plan of insurance on or before October 30, 1956, but he made no effort to avail himself of that right either.

In order to obtain a decision with respect to the proper disposition of the proceeds of the policy, the wife brought suit against the employer and the insurer. The employer in its answer admitted that the loan had been paid in full and that it was not entitled to the proceeds, and suggested that the widow was entitled to receive such proceeds "either legally or equitably" and that "there was apparently some [mis]-understanding." The insurer, disclaiming all interest in the proceeds, paid $5000 into court, and was dismissed as a party. The judgment creditors, upon their petition, and a stipulation of all the parties in interest, were permitted to intervene.

There is only meager testimony in the record concerning the intention of the insured with respect to the proceeds of the insurance policy. A fellow employee, who handled the application for the policy, testified that the insured wanted the least expensive policy he could get. A term policy with

a conversion provision was suggested. The insured desired to make his employer the beneficiary, and inquired whether he could change the beneficiary by designating his wife as such when the loan was paid off. He was assured that he could. On one occasion, while they were driving down town, the insured told his son that after the loan had been paid back, he would change the name of the beneficiary from the employer to the second wife, who is now the widow. The widow, over the objection of the intervenors, was permitted to testify with respect to the loan and the policy. She stated her husband had told her he was taking out a policy making his employer the beneficiary, and that when the loan was paid off he would change the policy by making her the beneficiary.

A fellow employee testified he had discussed the subject of additional protection for the family of the insured in the late summer of 1956. He related that the amount of the term policy was taken into consideration, but neither he nor the insured considered the possibility of changing the provisions of the policy in order to name the wife the residuary beneficiary; nor did they consider converting the policy in order to provide additional ordinary life insurance; nor did they consider the possibility of changing the name of the beneficiary of the policy to the wife and then assigning it to the employer as security for the balance due on the loan.

The other life insurance of the insured was payable to his wife. He knew the loan had been fully repaid, but for reasons known only to himself, he took no affirmative action to revoke or alter the prior designation of beneficiary in the term policy so as to make his wife the beneficiary thereof. There is, of course, the evidence that he intended to make a change of beneficiary sometime in the future after the loan had been repaid, but there is no evidence of an intent to transfer a *present* interest in the policy to his wife.

The chancellor in his opinion stated he could find no legal basis for reformation of the policy or for holding that the wife had been made the beneficiary thereof, and, in dismissing the bill, directed the clerk of court to pay the proceeds of the policy to the widow *as executrix of her husband's estate,* after deducting the costs of the proceeding in the lower court,

to be administered by her "as a part of the assets of the estate."

The widow contends that the policy should be reformed so as to designate her as the contingent or residuary beneficiary, and, in the alternative, that the proceeds, payable to the employer as the sole beneficiary, were in law held in trust by the employer for her. In addition to disputing the widow's contentions, the intervenors contend that the provisions of Code (1957) Art. 35, § 3 made the testimony of the widow inadmissible, and that the costs below and in this Court should be paid by the widow.

### (i). Reformation of Policy.

The reformation of an insurance contract cannot be decreed in the absence of proof of a mutual mistake. It is elementary that a contract may be reformed when it is shown by competent evidence that a mutual mistake did in fact occur. In this respect a contract of insurance is not different from any other contract and may be reformed, even after the death of the insured, to correct a mistake in the name of the beneficiary and thereby effectuate the intention of the parties. See the dictum in *Silberstein v. Life Insurance Co.,* 189 Md. 182, 185, 55 A. 2d 334 (1947). See also 13 Appleman *Insurance Law and Procedure* § 7607 (1943). However, when the rules of law governing the reformation of an insurance policy to correct a mistake are to be applied, a proper case must be presented. Specifically, to justify the reformation, it must be shown by satisfactory proof that a valid policy exists and that, by reason of the mutual mistake on the part of both parties to the contract, the policy does not conform to the actual agreement made by the parties. *American Casualty Co. v. Ricas,* 179 Md. 627, 22 A. 2d 484 (1941). See also *Johnson v. National Mut. Ins. Corp.,* 175 Md. 543, 3 A. 2d 460 (1939), in which the mistake sought to be corrected by reformation was also not mutual. Cf. *Ben Franklin Ins. Co. v. Gillett,* 54 Md. 212 (1880), in which the insured was clearly entitled to a reformation of the policy of insurance.

In 13 Appleman *op. cit. supra,* § 7608, it is said:

"The court cannot reform a plain insurance policy, nor can it make a new or substantially different contract for the parties. While equity may reform a policy, even in material clauses, where it does not express the intention of the parties, this power should be exercised with great caution and only in cases where the proof is entirely satisfactory."

The chancellor found as a fact that the widow had not presented a proper case for reformation of the policy. He was clearly right. There was evidence that the insured had stated on several occasions that he intended to designate his wife as the beneficiary when his debt to his employer had been fully paid, but there was absolutely no evidence that the parties to the insurance contract had made a mutual mistake in designating the employer as the sole beneficiary before or at the time the contract was finally consummated. Under these circumstances, the court was without authority to grant reformation since it would have amounted to making a materially different contract for the parties. Appleman *op. cit. supra,* § 7608.

### (ii). Disposition of Proceeds.

The chancellor was also right when he directed payment of the proceeds of the policy to the estate of the insured instead of to the widow. In a case such as this where the policy designated a creditor as the sole beneficiary, the disposition of the proceeds depends largely on the intention of the parties to the insurance contract, the terms of that contract and the circumstances in each case. We must consider who took out the policy, who paid the premiums on it, and the reason why it was taken out.

In this case the employer-creditor disclaimed any part of the proceeds because its debt had been satisfied before the insured died. In Maryland it has been held that a creditor, who takes out a policy on the life of a debtor, has an insurable interest and may collect the proceeds of the policy, notwithstanding the creditor's interest ceased during the life

of the debtor. *Rittler v. Smith,* 70 Md. 261, 16 A. 890 (1889). The same result was reached where a debtor assigned a policy he had purchased to a creditor who thereafter paid the premiums. *Fitzgerald v. Rawlings,* 114 Md. 470, 79 A. 915 (1911). However, most jurisdictions hold that when a *debtor* takes out a policy on his *own* life payable to a creditor with the intention of securing a debt, the extent of the creditor's interest is limited by the amount of the debt. In 29 Am. Jur. *Insurance* § 1289, the general rule is stated thus:

> "[I]t has generally been held that the balance of the proceeds left after * * * [satisfying] the creditor belongs to the estate of the insured, or to one who may be designated in the policy as entitled thereto or * * * [to the one] otherwise shown by convincing evidence to have been intended to be protected * * *."

This identical statement may also be found in 115 A. L. R. 741, 745 (1938).

In 2 Appleman *op. cit. supra,* § 1350, it is stated flatly that:

> "After the amount of the debt has been paid the creditor, the insured's representatives are entitled to recover the balance thereof."

[The text writer does point out, however, as does *American Jurisprudence,* that] :

> "[O]ther cases have even held that the proceeds should be paid directly to the objects of the insured's bounty, after discharge of the debt."

Another text writer is in accord with the theory that the surplus proceeds belong to the contingent or residuary beneficiary, if there be one, or to the insured or the estate of the insured, if no provision has been made. See Vance *Insurance* § 123 (3d ed. 1951), where it is said:

> "Frequently the policy is made payable to the creditor 'as his interest may appear;' but even in the absence of any contract provision as to the surplus remaining after payment of the debt from the proceeds of the policy, it is held to belong to the

contingent beneficiary or to the insured debtor, or his representative."

In the instant case the insured contracted for the policy, the premiums were paid out of monies earned by him and the policy was procured primarily, if not solely, to secure the repayment of the loan made by the employer to the insured. Moreover, the policy was neither payable to the widow nor assigned to her, and there is no evidence that the insured ever made any attempt to confer upon her a present interest. Although he expressed an intent on several occasions to designate his wife as the beneficiary in the place and stead of his employer after he had fully paid his obligation to his employer, he never got around to doing so within the brief period between December 31, 1956, when the debt was fully paid; and March 5, 1957, when he died. Moreover, the insured made no attempt at any time, either directly or otherwise, to effect a delivery of the policy to his wife. A mere unexecuted intent to substitute a new beneficiary is not enough, without more, to effect such change. *Ringler v. Ringler*, 156 Md. 270, 278, 144 A. 221 (1929). Cf. *Daly v. Daly*, 138 Md. 155, 113 A. 643 (1921), wherein a change of beneficiary was regarded as having been made, it appearing that the intent to effect a change of the beneficiary of a group life policy was thwarted by the lack of proper blanks and the oversight of the employer's agent. Also compare *Harrison v. McConkey*, 1 Md. Ch. 34 (1847), where the express terms of the assignment of a policy stipulated that the surplus proceeds should be paid to a named residuary beneficiary. And see *First Nat. Bank v. Thomas*, 151 Md. 241, 134 A. 210 (1926), *Bimestefer v. Bimestefer*, 205 Md. 541, 109 A. 2d 768 (1954) and *Sheeler v. Sheeler*, 207 Md. 264, 114 A. 2d 62 (1955), also *Hancock v. Fidelity Mut. Life Ins. Co.*, 53 S. W. 181 (Ct. of Ch. App. Tenn., 1899), wherein parol assignments accompanied by deliveries of the policies were sufficient to give effect to such assignments.

It is also apparent that the insured neither made a gift of the policy nor created a trust with respect to the proceeds. Either may be proved by parol, but the evidence thereof

must be clear and convincing. The inquiry and declarations made by the insured as shown by the record—whether "he *could* change the beneficiary to his wife *when* he paid off the loan"—that *"when* the loan was * * * paid off he *would* change the policy making * * * [his wife the] beneficiary" —that "he *would,* after he paid back the loan, * * * change the beneficiary from the company to * * * [the mother of his son]"—are insufficient to establish either a gift or a trust. With respect to a gift it was said in *Berman v. Leckner,* 193 Md. 177, 66 A. 2d 392 (1949), at p. 182:

> "If a gift has reference to a future time when it is to operate as a transfer, it is only a promise without consideration, and cannot be enforced either at law or in equity."

The law with respect to trusts is the same. In *Pope v. Safe Dep. & Tr. Co.,* 163 Md. 239, 161 A. 404 (1932), it was said at p. 249:

> "A mere declaration of a purpose to create a gift or trust, a simple promise, without consideration, of a future donation, are alike insufficient. * * * There must be an intention to transfer a present interest to the *cestui que trust,* and this requirement is not gratified by evidence which merely shows that the party with title and possession of the *res* intended it to belong, after his death, to another."

Since there must have been an intent to give a present interest in the policy to his wife, evidence which merely shows the insured intended to change the name of the beneficiary from his employer to his wife after he had paid in full his obligation to his employer is not sufficient for that purpose. Cf. *Ratsch v. Rengel,* 180 Md. 196, 23 A. 2d 680 (1942), *First Nat. Bank v. Thomas, supra, Bimestefer v. Bimestefer, supra,* and *Sheeler v. Sheeler, supra,* wherein parol gifts of life insurance policies were held to be valid. Also compare *Clark v. Callahan,* 105 Md. 600, 66 A. 618 (1907), *Coyne v. Supreme Conclave,* 106 Md. 54, 66 A. 704 (1907) and *Hayward v. Campbell,* 174 Md. 540, 199 A. 530 (1938), wherein

parol trusts of the proceeds of life insurance policies were likewise held to be valid.

We think it is clear that in this case—where a creditor, which was the sole beneficiary named in the policy, had been paid in full before the death of the insured and subsequently admitted that it was not entitled to the proceeds—and where the insured never validly *appointed* a new beneficiary or *altered* or *revoked* the prior designation, and never validly *made* a gift to or *created* a trust in favor of his wife as he apparently *intended* to do but never did, then the proceeds of the policy are payable to the estate of the insured.

The case of *Dunn v. Second Nat. Bank of Houston*, 131 Tex. 198, 113 S. W. 2d 165, 169 (1938), which was a suit between the administrator of the insured and the creditor-beneficiary, is in point. There it was said:

> "[A] creditor named as a beneficiary in a policy of life insurance may after the death of the insured collect the amount due according to the terms of the policy, but he may retain for himself only the amount of the debt due at the death of the insured, together with any such amount as he may have paid to preserve the policy. The remainder will be given to the estate of the insured. * * * The creditor named as beneficiary * * * holds the proceeds of the policy so collected in excess of what is required to pay the debt as trustee for the estate of the insured."

The same result was reached in *Novotny v. Acacia Mut. Life Ins. Co.*, 287 Ill. App. 361, 4 N. E. 2d 978, 980 (1936), where there was a contest between the administrator of the deceased and his children. There, the insured had revoked the appointment of the first beneficiary and had neglected to name a new one. The Court, in ruling that the administrator was entitled to the proceeds, said:

> "We find no cases in this State presenting the question as to who shall collect where no beneficiary is designated and the policy does not cover such a contingency. * * * [T]he fund belongs to

the insured's estate and the executor or administrator can collect. No other view is reasonably possible."

See also *Washington Central Bank v. Hume,* 128 U. S. 195 (1888); *Boyden v. Massachusetts Masonic Life Ass'n,* 167 Mass. 242, 45 N. E. 735 (1897), [when a beneficiary is ineffectively designated the proceeds are payable to the administrator, not the wife]. And see *Strode v. Meyer Bros. Drug Co.,* 101 Mo. App. 627, 74 S. W. 379 (1903); 46 C. J. S. *Insurance* § 1162; 1 Scott *Trusts* § 57.3 (2d ed. 1956).

### (iii). Allocation of Costs.

In the trial court, the prevailing party is entitled to an allowance of costs, unless otherwise provided by law, or ordered by the court. Maryland Rule 604 a. On appeal, the awarding of costs is in the discretion of this Court, but, unless otherwise ordered, costs are awarded against the losing party. Rule 882 a.

As a general rule, the costs should be paid by the losing party and not out of the estate or fund in controversy. But in some circumstances the general rule may be modified. Often in an action in equity[1] brought by a fiduciary in his representative capacity, costs are required to be paid out of the fund in the absence of mismanagement or bad faith, provided the costs were incurred in promotion of the interests of those found to be entitled to the fund. 14 Am. Jur. *Costs* § 38 [Payment from Property or Fund]. See also *Hitchens v. Safe Deposit & Trust Co.,* 193 Md. 62, 66 A. 2d 97 (1949), wherein a proceeding initiated by the trustee for a construction of the will in which none of the beneficiaries appealed and the only question raised was as to the derivative right of the wife to a part of her husband's share of the trust fund, this Court, in the exercise of its discretion, directed the costs to be paid out of the share. In *Hobbs v. McLean,* 117 U. S. 567 (1886), it was held that one who brings an adversary

---

1. Under Rule 604 a there is no distinction between law and equity.

suit to take possession of a trust fund from those entitled to it and fails, has no right to reimbursement of his expenses out of the trust fund.

The chancellor found that the instant case was in the nature of an interpleader. We agree. But, instead of being paid out of the fund paid into court, the costs and fees in an interpleader proceeding are generally payable by the defendant who has made the litigation necessary. *Hopkins v. Easton Nat. Bank,* 171 Md. 130, 187 A. 874 (1936). See also 4 Pomeroy *Equity Jurisprudence* § 1328 (5th ed. 1941); 30 Am. Jur. *Interpleader* § 28.

We think the costs should be paid out of a fund only in those proceedings in which the parties have a common interest or when the fund itself benefits from the action. When there is an adversary proceeding, such as this, to determine who is entitled to the fund in dispute, the losing party should pay the costs in the trial court and on appeal. In this instance the plaintiff-appellant should pay the costs in both courts.

Having arrived at the conclusion that the proceeds of the policy of insurance are payable to the estate of the insured and that the widow should pay the costs in the lower court and on this appeal, it is not necessary to consider whether the admission of the testimony of the widow was contrary to the provisions of Art. 35 § 3, *supra*.

> *Order affirmed, the appellant to pay the costs in the trial court and on this appeal.*