LUVERANEIZE WILLIAMS *et al.*, Plaintiffs-Appellees, *v.* TEACHERS INSURANCE AND ANNUITY ASSOCIATION, Defendant—(LILLIE CARTER, Defendant-Appellant.)

(No. 56648;

First District (3rd Division)—October 18, 1973.

*Rehearing denied December 10, 1973.*

Philip J. McGuire, of Dowd, Dowd and Dowd, of Chicago, for appellant.

Shale H. Cohen, of Fleischer, Wexler, Zahler & Cohen, of Chicago, for appellees.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

Raymond Williams was employed at an educational institution in 1960 and an insurance policy, issued by Teachers Insurance and Annuity Association, was taken out on his life. Williams' mother, the defendant Lillie Carter, was named as the beneficiary of the policy and had possession of it on the date of her son's death in April 1971. Subsequently, Luveraneize Williams, who alleged that she was the common-law wife of the decedent, filed a complaint requesting that a resulting trust be declared in the proceeds of the policy for her benefit and that of four children born of the relationship or that the policy be modified by changing its beneficiary clause in her and their favor.

The complaint stated that the plaintiff maintained a home for the decedent and their children, that she was pregnant with a fifth child fathered by him, and that she had been gainfully employed and had contributed substantial amounts to the family. She alleged that she talked to Williams on numerous occasions concerning their financial status and threatened to leave him unless suitable arrangements were made for their security. He responded that he had made a change in the beneficiary clause of his insurance policy which would provide for his family. Believing this to be true, she continued to cohabit with him until his death.

The insurance company deposited the amount of the policy with the clerk of the court and was then discharged as a party. After a disbursement for funeral expenses, the balance on deposit was $24,230.50. The chancellor found that the legal and equitable title to the balance of the property was in the plaintiff and her children and impressed a trust on the fund in their favor. Mrs. Carter appealed and raises these contentions: the elements of a trust were not proven, the evidence was insufficient to prove that the beneficiary of the policy had been changed, and improper testimony was admitted at the trial.

The plaintiff testified that she was married to an inmate of a penitentiary at the time she was living with Williams. She met Williams in 1958, started living with him in 1961 and divorced her husband in 1967. She took care of Williams and their children; besides being a wife and mother, she held intermittent jobs and used her earnings for household

expenses. She and Williams filed joint income tax returns and purchased real estate in joint tenancy; they opened charge accounts in both their names but placed the title to the family automobile in her name. She testified, over objection, about conversations she had with the decedent concerning the family security and finances. She stated an argument occurred in December 1967 and she threatened to leave with the children. He handed her a piece of paper and said she did not have to worry about security because the paper was worth $25,000 to $30,000 and she was the beneficiary. The document, which was introduced into evidence, was an application by the decedent for a retirement annuity contract with the Teachers Insurance and Annuity Association. Luveraneize Williams was named as the primary beneficiary and their children were listed as contingent beneficiaries, but the document bore no notation as to the size of the contract or the amount of the benefits. Numerous discussions were had in the ensuing months about finances and the last one occurred in the presence of a friend a few weeks before Williams died. The plaintiff testified that she first discovered the 1960 Teachers policy after his death. He left her the house which was the subject of foreclosure proceedings, the family automobile and two insurance policies in which she was the beneficiary. The policies amounted to approximately $2,200.

The friend to whom she referred testified, over objection, that Williams wanted him to co-sign a note in order to avoid the foreclosure. He assured the witness that Luveraneize would have $25,000 to $30,000 with which to repay him in case anything happened to him. The proposed co-signing never took place.

Lillie Carter testified that her son gave her the policy in 1960 and said it was to pay his burial expenses and the balance was to be for her old age. She stated that her son's common-law wife was not living with him when she was given the policy.

Following the closing arguments, the trial judge commented on the evidence. He particularly stressed the representations made by Williams in 1967 when he handed the plaintiff the paper and said it was worth $25,000 to $30,000. The judge noted that the paper was nothing more than an application for an unspecified amount of insurance, but he stated that it, along with the uncontradicted testimony of the plaintiff and the friend, evidenced the decedent's intention to leave the woman who lived with him as a wife $25,000 to $30,000. An analogy was made by the judge to antenuptial transfers of property made without the future wife's knowledge or consent which adversely affected her interests, which the courts have set aside as fraudulent. He observed that although the Williamses were not married they regarded themselves as husband and wife

and the principles of the marriage cases applied. The decedent's signing of the application form and his giving it to the plaintiff with the statement the she would be the beneficiary of the policy, was found to be for the purpose of inducing her to remain with him. The judge found, however, that the decedent did not intend to defraud her by his actions or words but attempted to indicate his intentions. In summary, the judge said:

> "The resulting trust is one expressed by law to give effect to the intention of the parties. Lillie Carter is certainly an innocent party, but it offends the conscience of equity to have Lillie Carter receive this sum of money to the exclusion of the natural children of the decedent and to the exclusion of the woman who bore these children through the decedent and who served him as a mate and as a servant for 11 years."

We concur with the trial court that there was no evidence that the decedent intended to defraud the plaintiff or that his mother took advantage of her in any way. We also are in accord with the court's observation about the equities of the situation. It seems unfair that the decedent's children and the woman who bore them are excluded from a policy of this size. We suggested at the conclusion of the oral argument that this was an appropriate case for a compromise, and we gave the parties time to discuss an equitable division of the money deposited with the court. They reported they could not reach an agreement. Regretfully, there is nothing left for us to do but to decide the case on the evidence and the law. Here we differ with the trial court; we find that the plaintiff's evidence did not prove that a trust was established in the proceeds of the policy.

The relief sought by the plaintiff was for the declaration of a resulting trust in the proceeds of the policy and the trial judge made reference to a resulting trust in his comments. However, his decree did not mention such a trust. The lack of designation is of no consequence. Equity looks to the substance rather than the form; if a trust was created it does not matter whether it is designated accurately, inaccurately or not at all.

■■ Trusts are either express or implied. There was no evidence of an express trust so this type of trust need not be considered. Implied trusts are created by operation of law and are commonly divided into constructive and resulting trusts. Because of the nature of this case which involves elements of both constructive and resulting trusts, our analysis will treat both forms.

■■ A constructive trust arises when advantage is taken of a fiduciary relationship by the dominant party or when fraud is proven. (*Perry v.*

*Wyeth* (1962), 25 Ill.2d 250, 184 N.E.2d 861.) The allegations of a complaint must be specific in order to establish a constructive trust (*Perry v. Wyeth; Dial v. Dial* (1959), 17 Ill.2d 537, 162 N.E.2d 404) and the plaintiff's complaint did not allege a fiduciary relationship or that an advantage had been taken of such a relationship. Likewise, there was no allegation of fraud. Even if the allegation, that Williams induced the plaintiff to stay with him by saying he had made her his beneficiary and that believing this to be true she continued to live with him, is considered to be a charge of fraud, it is neutralized by the concomitant allegation of his non-fraudulent intent: "* * * Decedent fully intended to complete such change of beneficiary and fully believed that in truth and in fact he had done so * * *." The court's analogy to the cases involving a spouse's pre-nuptial transfer of property and this case is groundless unless fraud, which is an element in the former cases, exists in the latter. The court recognized this. After comparing the marital cases favorably with the present one, the court stated: "If he [Williams] did attempt to defraud her * * *, even though it was not a question of contract of marriage, the basic principles that are enunciated in these marriage cases would apply." The court, however, definitely declared, "There is no evidence that he intended to defraud her * * *." The court's own pronouncement disassociated the marriage cases from the present one and the principles set forth in those cases are not applicable here. There was neither the charge nor the proof that Williams intended to defraud his mate and certainly there was no evidence that Mrs. Carter overreached her. The rudiments of a constructive trust were not established.

■■■ A resulting trust arises from the presumed intent of the parties. *West v. Scott* (1955), 6 Ill.2d 167, 128 N.E.2d 734; *Flowers v. Anderson* (1964), 49 Ill.App.2d 15, 198 N.E.2d 111.) Typically, this trust comes into being when land is purchased with the money of one party and title is taken by another; it is presumed that the title is held in trust for the party furnishing the purchase money. The determination of intent is based upon the acts of the parties at the time title vests, or not at all. (*Suwalski v. Suwalski* (1968), 40 Ill.2d 492, 240 N.E.2d 677; *Fender v. Yagemann* (1963), 29 Ill.2d 205, 193 N.E.2d 794; *Hanley v. Hanley* (1958), 14 Ill.2d 566, 152 N.E.2d 879.) Acts subsequent to the taking of title have no bearing upon the question of whether a resulting trust was created. (*Hanley v. Hanley; Hille v. Barnes* (1948), 399 Ill. 252, 77 N.E.2d 809.) With respect to the burden of proof, the court in *Suwalski v. Suwalski* stated:

> "The burden of proof rests upon the party seeking to establish a resulting trust, and the evidence to be effective for this purpose

must be clear, convincing, unequivocal and unmistakable, and must establish beyond a doubt the payment by the claimed beneficiary at the time the title was taken in the alleged trustee."

■■ With respect to an insurance policy with a beneficiary clause which can be changed, there are two instances when title vests. Initially title is vested in the insured when the policy is procured; another vesting occurs upon the death of the insured when the beneficiary becomes entitled to the proceeds. The plaintiff had no financial interest in the policy when it was procured. She was not living with Williams at the time and none of her money was used in obtaining the policy. Her case rests upon the declaration by Williams that he had made her the beneficiary of an insurance policy. Because he is supposed to have said that she would receive from 25,000 to 30,000 dollars it is contended that he was referring to the policy in which his mother was the beneficiary. The plaintiff did not even know there was such a policy until two weeks after he died. She was the beneficiary in two other policies and he may have been referring to one of these. It may have been his intention to increase his insurance or he may have thought that the policies would be worth $25,000 by the time he died. The evidence that he was speaking in regard to his first policy is not so unequivocal and unmistakable that it can be accepted as impressing a trust in her favor on the proceeds of that policy.

Williams was not unfamiliar with insurance policies. He had taken out life insurance policies on his children as well as for his mother and the plaintiff. The children's policies were cashed in when the need for money arose. When he showed the plaintiff the application for an annuity contract he, presumably, knew what it was. He and she knew it was not a document to change a beneficiary. If he had wanted her to know about the policy in which his mother was the beneficiary he would have told her about it. He did not disclose the policy to her and did nothing to make her the beneficiary. The most he is supposed to have said, according to the plaintiff, was that "he had changed his beneficiary, policy he had changed everything to me and the kids." His lack of any affirmative action to change the beneficiary was not offset by his ambiguous expression that a change had been made.

■■ Generally, when a policy of insurance states the method by which a change of beneficiary can be made, the prescribed mode is exclusive; a change by any other method is ineffectual. (*Suga v. Suga* (1962), 35 Ill.App.2d 355, 182 N.E.2d 922.) Williams' policy required written notice to the insurer. Although not required, the company recommended endorsement on the policy and a space was provided for this purpose. Williams neither followed the mandate of the policy nor

did anything else (*Donahey v. Sweigart* (1949), 336 Ill.App. 366, 84 N.E.2d 170) to effectuate a change in the beneficiary clause. An oral declaration that a beneficiary has been changed or will be changed is not sufficient to effect the change. *Urquhart v. Alexander, Inc.* (1959), 218 Md. 405, 147 A.2d 213; *Kubin v. Kubin* (1943), 232 Iowa 1034, 6 N.W.2d 860.

In the case of *Clemens v. Sandee Manufacturing Co.* (1969), 114 Ill.App.2d 322, 252 N.E.2d 897, contains many similarities to the present case and the plaintiff relies on it heavily. A policy of insurance had been written upon the life of a Sandee Mfg. Co. employee who was the husband of the plaintiff. The company, which was the named beneficiary, had applied for the policy; it was issued to the company, held exclusively in the company's possession, borrowed against by the company and paid to the company upon the employees' death. His widow filed a complaint to establish a fund in the proceeds. She prevailed in the trial and the appellate court. The plaintiff here overlooks one aspect of the *Clemens* case which decisively distinguishes it from her case: an officer of the beneficiary company had agreed that in the event of the employee's death the proceeds would be paid to the widow.

■■ There is neither allegation nor proof that Mrs. Carter agreed to waive her right as a beneficiary and to hold the proceeds in trust for the plaintiff. The relationship between the plaintiff and Mrs. Carter was friendly. The plaintiff stayed at her home after she and Williams had serious quarrels. Mrs. Carter came to their home to help out; she sometimes did their laundry and she loaned them money so that mortgage installments could be paid. There is nothing to suggest that she took advantage of the plaintiff in reference to the policy, breached a trust, defrauded her or did anything wrong. We see no reason for finding that she held the proceeds of the policy in trust for the plaintiff or why she should be deprived of her vested right in the policy.

■■ The evidence supports the conclusion that it was Williams' intention to create an interest for the plaintiff in a policy or policies issued by the same insurer, entirely distinct from his mother's. The proof that he intended to invade his mother's beneficial interest was so indefinite and vague that a resulting trust cannot be imposed, to the detriment of that clearly innocent defendant, upon the fund designated for her.

The defendant's second contention, that the evidence did not prove that the beneficiary of the policy had been changed is superfluous to this appeal. The plaintiff never claimed the beneficiary was changed. The third contention is that the trial court erred in admitting hearsay testimony of the decedent's statements; that it ignored its own limitation concerning the purpose for which the testimony was admitted by im-

properly accepting the truth of the underlying hearsay statements. We need not consider this contention because, irrespective of the possibility that improper testimony may have been admitted and relied upon by the court, the plaintiff is not entitled, even upon all of the evidence presented, to the relief which was granted.

The judgment is reversed and the cause is remanded with instructions to enter a decree in favor of the rightful beneficiary, Lillie Carter.

Reversed and remanded with directions.

McNAMARA and McGLOON, JJ., concur.